[No. 49971–3.   En Banc.   May 17, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. CHARLES
W. PETRICH, *Petitioner.*

*Robert S. Egger,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Rebecca Roe, Deputy,* for respondent.

DIMMICK, J.—Petitioner was charged with one count of indecent liberties and one count of second degree statutory rape. At trial, numerous incidents of sexual contact were described in varying detail. He was convicted on both counts and now seeks review of his convictions, contending that the State's failure to elect the act upon which it relied for each conviction deprived him of his right to a unanimous jury verdict. We conclude that the trial court's failure to ensure a unanimous verdict warrants a new trial. Although we need not reach petitioner's other issues, his assertion that it was error to admit expert testimony concerning the reporting patterns of sexually abused children is discussed inasmuch as it is likely to arise again upon retrial.

The victim of both counts was petitioner's granddaughter. She testified that the incidents of sexual contact began after the death of her father on March 1, 1979, with the last episode occurring sometime during Christmas vacation in 1980. Following that vacation, the victim, then 13, refused any further sexual contact with her grandfather. On direct examination, she described the first incident in some detail. She mentioned many other incidents, including several involving sexual intercourse. On cross examination, at least four episodes were discussed at length. All of these incidents occurred during the same summer. After that summer she could not recall specific details, either dates or places, although the episodes usually occurred on a weekend or vacation and either at her grandparent's home or in petitioner's truck parked near a river.

The victim did not report these occurrences to anyone until approximately 8 months later, in July or August 1981. She explained that petitioner had told her not to tell, that she feared she would not be believed or loved if she told, and that her grandfather would go to jail. She expressed love for her grandparents and concern that she would not

be permitted to see them anymore. Over objection, the State presented the testimony of Kathleen Kennelly of the Harborview Sexual Assault Center. She testified that a delay in reporting was found in over 50 percent of sexual abuse cases involving child victims. She further stated that delay could be in terms of years, and that longer delay was associated with cases where the perpetrator was someone known to the child. She also stated that in "eighty–five to ninety percent of our cases, the child is molested by someone they already know."

At the end of the State's case, the defense moved to compel the State to elect which offense was to be relied on for conviction, arguing that defendant was charged with only one count of each offense but the evidence showed several incidents. Defense counsel pointed out that unless the jury agreed on one particular incident as the basis for each charge, the verdict would not be unanimous. The State responded that one continuing offense had been charged. The motion to compel election was denied.

Petitioner was found guilty on both counts. The Court of Appeals, in an unpublished opinion, affirmed.

I

In Washington, a defendant may be convicted only when a unanimous jury concludes that the criminal act charged in the information has been committed. *State v. Stephens,* 93 Wn.2d 186, 190, 607 P.2d 304 (1980). The nature of this right to a unanimous verdict and the extent of protection that it affords has engendered some controversy. *See State v. Franco,* 96 Wn.2d 816, 639 P.2d 1320 (1982) (Utter, J., dissenting). For example, when the State alleges alternative means of committing a single criminal act, this court has approved instructions that, although requiring unanimity in the verdict, did not require a unanimous determination of which of several alternative means was actually used to commit the crime, so long as substantial evidence supported each alternative. *State v. Arndt,* 87 Wn.2d 374, 553 P.2d 1328 (1976); *cf. State v. Green,* 94 Wn.2d 216, 616

P.2d 628 (1980) (insufficient evidence to support submitting a kidnapping alternative to the jury in an aggravated murder trial).

We note the line of cases relying on *Arndt,* but find them inapplicable here. This is not an "alternative means" case. The State charged petitioner with one count each of statutory rape and indecent liberties, but proceeded at trial to present evidence of numerous separate criminal acts. Petitioner argues that when the evidence shows several incidents which could form the basis of the one incident charged in the information, to ensure a unanimous verdict on the underlying crime, the State must tell the jury which act is relied on to convict.

In a very similar situation, this court reversed a conviction involving one charge of carnal knowledge because the evidence tended to prove three distinct commissions of the offense at different times and places. *State v. Workman,* 66 Wash. 292, 119 P. 751 (1911). The court stated:

> [W]here the evidence tends to show two separate commissions of the crime, unless there is an election it would be impossible to know that either offense was proved to the satisfaction of all of the jurors beyond a reasonable doubt. The verdict could not be conclusive on this question, since some of the jurors might believe that one of the offenses was so proved and the other jurors wholly disbelieve it but be just as firmly convinced that the other offense was so proved. The greater the number of offenses in evidence, the greater the possibility, or even probability, that all of the jurors may never have agreed as to the proof of any single one of them. . . . [T]he proper course in such a case, after the evidence is in is to require the state to elect which of such acts is relied upon for a conviction.

*Workman,* at 294–95. The court further found the trial court's refusal to require election prejudicial error, and reversed for a new trial. *Workman,* at 295. *Accord, Deason v. State,* 363 So. 2d 1001 (Ala. 1978); *People v. Mota,* 115 Cal. App. 3d 227, 171 Cal. Rptr. 212 (1981); *People v. Estorga,* 612 P.2d 520 (Colo. 1980); *Commonwealth v.*

*Stites,* 190 Ky. 402, 227 S.W. 574 (1921); *Burlison v. State,* 501 S.W.2d 801 (Tenn. 1973); *State v. Counterman,* 8 Ariz. App. 526, 448 P.2d 96 (1968).

The State's attempt to avoid application of *Workman* by characterizing the charge as a continuing offense is not persuasive. Under appropriate facts, a continuing course of conduct may form the basis of one charge in an information. But "one continuing offense" must be distinguished from "several distinct acts," each of which could be the basis for a criminal charge. *See United States v. Berardi,* 675 F.2d 894 (7th Cir. 1982); *People v. Mota, supra.* To determine whether one continuing offense may be charged, the facts must be evaluated in a commonsense manner. In the present case, each described incident occurred in a separate time frame and identifying place. The only connection between the incidents was that the victim was the same person; this is not enough to call the offense one transaction. *See* Royce & Waits, *The Crime of Incest,* 5 N. Ky. L. Rev. 191 (1978); *cf. People v. Mota, supra* (repeated gang rape of victim over a several–hour period held to be one continuing offense as to each defendant).

Nor do we believe that petitioner's motion for election was a request for specificity. Petitioner does not argue that the information was defective; thus, criminal rules allowing objections and amendments to the information are not applicable. *See, e.g.,* CrR 2.1(d), (e). Further, petitioner's motion was not untimely. He could not have raised the election issue before the evidence had been presented.

Petitioner concedes that an instruction was not requested which could have informed the jury that it must unanimously agree on the same criminal act for conviction on each charge. In another context, we suggested that error, if any, may be obviated by instructing the jury fully on its need to agree unanimously when alternatives are presented by the evidence. *See State v. Parmenter,* 74 Wn.2d 343, 353–54, 444 P.2d 680 (1968); *accord, Commonwealth v. Stites, supra.* Under the circumstances, petitioner's failure

to request an instruction did not waive his objection. Petitioner made a proper motion before the trial court, fully apprising the court of his argument and its legal basis. The denial of that motion was reasonably interpreted as the trial court's final decision on the matter. Renewal of petitioner's argument, in the form of a jury instruction based on the same claim, was not required to preserve this issue.

When the evidence indicates that several distinct criminal acts have been committed, but defendant is charged with only one count of criminal conduct, jury unanimity must be protected. We therefore adhere to the *Workman* rule, with the following modification. The State may, in its discretion, elect the act upon which it will rely for conviction. Alternatively, if the jury is instructed that all 12 jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt, a unanimous verdict on one criminal act will be assured. When the State chooses not to elect, this jury instruction must be given to ensure the jury's understanding of the unanimity requirement.

These options are allowed because, in the majority of cases in which this issue will arise, the charge will involve crimes against children. Multiple instances of criminal conduct with the same child victim is a frequent, if not the usual, pattern. Note, *The Crime of Incest Against the Minor Child and the States' Statutory Responses,* 17 J. Fam. L. 93, 99 (1978–79). Whether the incidents are to be charged separately or brought as one charge is a decision within prosecutorial discretion. Many factors are weighed in making that decision, including the victim's ability to testify to specific times and places. Our decision in this case is not intended to hamper that discretion or encourage the bringing of multiple charges when, in the prosecutor's judgment, they are not warranted. The criteria used to determine that only a single charge should be brought, may indicate that the election of one particular act for conviction is impractical. In such circumstances, defendant's right to a unanimous verdict will be protected with proper jury

instructions.

In petitioner's case, the evidence indicated multiple instances of conduct which could have been the basis for each charge. The victim described some incidents with detail and specificity. Others were simply acknowledged, with attendant confusion as to date and place, and uncertainty regarding the type of sexual contact that took place. The State was not required to elect, nor was jury unanimity ensured with a clarifying instruction. The error is harmless only if a rational trier of fact could have found each incident proved beyond a reasonable doubt. *See State v. Franco, supra.* We cannot so hold on this record. Petitioner is entitled to a new trial.

## II

Petitioner's second ground of error concerns Kennelly's expert testimony describing the delayed reporting patterns of sexually abused children. He argues that the testimony was an improper attempt to bolster the victim's credibility, because the victim's failure to report the occurrences was a collateral issue, her credibility was not attacked, and, in any case, her credibility may be reestablished only by evidence of her reputation in the community for truthtelling.

We dispense with his last argument first. Appearing to rely on ER 608,[1] petitioner argues that when a witness's credibility has been impeached, the witness may be rehabilitated only by evidence of a reputation for truthful character. We read ER 608 quite differently. ER 608 does not govern all impeachment situations. Character for truthfulness is only one basis for challenging a witness's credibility. *See* 5 K. Tegland, Wash. Prac., § 224 (2d ed. 1982). Our rules of evidence, like the federal rules, do not attempt to specify rules with regard to all aspects of impeachment testimony. *See* 3 J. Weinstein & M. Berger, *Evidence*

---

[1]ER 608(a) provides in part: "(1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by reputation evidence or otherwise."

¶ 607[02], at 607–20 through 607–22 (1982). But when a witness has been impeached through an attack on character, ER 608 allows reputation evidence of the witness's character for truthfulness to be admitted.[2]

The rules relating to character evidence are not pertinent here. The victim's testimony was impeached because the evidence revealed conduct from which the jury could have inferred a behavioral response inconsistent with her testimony. Even assuming that this evidence properly placed her credibility in issue, it did not attack her *character for truthfulness.*

■ Petitioner further suggests that the evidence of the victim's inconsistent conduct was merely a collateral issue and that witnesses may not be impeached on collateral matters. *See, e.g., State v. Descoteaux,* 94 Wn.2d 31, 614 P.2d 179 (1980). The test for collateralness is whether evidence is admissible for any purpose independent of contradiction. *State v. Descoteaux, supra.* Facts tending to discredit a witness which the examiner could have inquired into on cross examination, even if the witness had not raised them in direct testimony, are not collateral. *See* J. Weinstein & M. Berger, at 607–87. We think that petitioner would hardly dispute his right to have raised the subject of the victim's failure to report the sexual contact for over 8 months had it not been initially raised during her direct testimony.

■ Petitioner also correctly assumes that corroborating testimony intended to rehabilitate a witness is not admissible unless the witness's credibility has been attacked by the opposing party. *State v. Froehlich,* 96 Wn.2d 301, 635 P.2d

---

[2]Character evidence is ordinarily inadmissible for the purpose of proving that one acted in conformity with that character on a particular occasion. ER 404. The rules provide several exceptions, however, including character evidence used for impeachment purposes. *See* ER 404(a)(3). As the Comment to ER 608 points out, ER 608 restricts the use of permissible *character* evidence for impeachment to evidence of the witness's reputation for truthfulness, and cross examination regarding specific instances of conduct if probative of truthfulness or untruthfulness.
.

127 (1981). An attack on credibility is not found merely by evaluating cross examination tactics; several factors taken in conjunction may show a challenge to credibility. *See Froehlich,* at 305. In particular cases, the credibility of a witness may be an inevitable, central issue. *See, e.g., United States v. Arroyo–Angulo,* 580 F.2d 1137, 1146–47 (2d Cir.), *cert. denied,* 439 U.S. 913 (1978). Cases involving crimes against children generally put in issue the credibility of the complaining witness, especially if defendant denies the acts charged and the child asserts their commission. An attack on the credibility of these witnesses, however slight, may justify corroborating evidence.

Here, petitioner concedes that the State's case rested on the credibility of the victim's testimony. The victim testified, without objection, on direct examination to an 8–month delay in reporting the abusive incidents. On cross examination, defense counsel probed several incidents which occurred during the delay period which reflected both opportunity and lack of motive to report any abuse. We find sufficient circumstances to warrant the determination that the victim's credibility was challenged.

■ Once a witness's credibility is in issue, evidence tending to corroborate the testimony may, in the trial court's discretion, be obtained from an expert witness. *See Froehlich,* at 307–08. *See also State v. Thacker,* 94 Wn.2d 276, 616 P.2d 655 (1980). *Accord, State v. Kim,* 64 Hawaii 598, 645 P.2d 1330 (1982); *People v. Russel,* 69 Cal. 2d 187, 443 P.2d 794, 70 Cal. Rptr. 210 (1968). The initial determination to allow expert testimony requires the trial court to find that the testimony presents information likely to help the jury to understand the evidence. *See* ER 702; *Swartley v. Seattle Sch. Dist. 1,* 70 Wn.2d 17, 421 P.2d 1009 (1966). The trial court must evaluate both the relevance of the testimony and its prejudicial impact, excluding unnecessarily cumulative or unfairly prejudicial testimony. *See* ER 402, 403. We will not disturb a discretionary admission of expert testimony absent abuse.

In the present case, the trial judge restricted Kennelly's

testimony, following the offer of proof, to the statistics that supported her opinion that delay in reporting is not unusual and that the length of delay correlates with the relationship between the abuser and child. We do not find that the trial court abused its discretion by allowing this limited testimony.

█ Petitioner further objects to Kennelly's testimony on the ground that it impermissibly identified petitioner as a member of a group having a higher incidence of child abuse. *State v. Maule*, 35 Wn. App. 287, 667 P.2d 96 (1983). The offending statement was that in "eighty–five to ninety percent of our cases, the child is molested by someone they already know." While this statement was made in the context of explaining the extent of delayed reporting in certain types of cases, we believe its potential for prejudice is significant compared to its minimal probative value. *See State v. Maule, supra; State v. Steward,* 34 Wn. App. 221, 660 P.2d 278 (1983). On retrial, expert testimony should be excluded that invites the jury to conclude that because of defendant's particular relationship to the victim, he is statistically more likely to have committed the crime.

The judgment of the Court of Appeals is reversed, and the case remanded for a new trial.

WILLIAMS, C.J., and ROSELLINI, STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, DORE, and PEARSON, JJ., concur.