IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | ) | No. 68114-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ROBERT LEE TOMS AKA JAMIL AL | ) | |
| KATIB ALWALI MU-TAZZ, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 22, 2013 |

SCHINDLER, J. — A jury convicted Robert Lee Toms of vehicle prowl in the

second degree, assault in the third degree of a law enforcement officer, and possession

of cocaine. Toms seeks reversal of the conviction for assault in the third degree. Toms

contends the court erred in failing to give a unanimity instruction. The State asserts that

because the acts of assault were part of a continuing course of conduct, no unanimity

instruction was required. We affirm.

FACTS

At about 7:00 p.m. on May 14, 2011, Jared Hooper and a friend drove to Seattle

to go to a soccer game. Hooper parked his car a short distance north of South

Dearborn Street on 10th Avenue South. Interstate 5 (I-5) is located to the west of 10th

Avenue South. To the east of 10th Avenue South is an area of trees and brush.

When Hooper and his friend returned to the car at approximately 10:00 p.m., they saw "someone's legs hanging out from the back window" of the passenger side of the car. Hooper said it looked like the "upper half" of the person was inside the car.

Hooper immediately ran towards the car. The person, later identified as Robert Lee Toms, ran "into the bushes" located on the east side of the street. Hooper chased Toms south for about 100 yards before Toms jumped over some bushes and down a 10- to 20-foot drop back to 10th Avenue South. Toms then walked south towards South Dearborn Street.

When Hooper got back to the car, he and his friend flagged down a marked Seattle Police Department patrol car. The police officer broadcast over the police radio that a car prowl had just occurred on 10th Avenue South near South Dearborn Street.

Police Officer Paul Ducre was nearby and responded to the radio broadcast. Officer Ducre parked his patrol car at the northern end of a hilly wooded area known as "the jungle" that parallels I-5 along the highway's east side near South Dearborn Street.

When Officer Ducre got out of the patrol car, he saw Toms standing about 30 yards away. Officer Ducre identified himself as a police officer and asked Toms to show his hands. Toms immediately started running south into the jungle. Officer Ducre broadcast his location and ran after Toms.

When Officer Ducre caught up to Toms, he and Toms fell to the ground. As Officer Ducre tried to pull himself free from the shrubs, Toms kicked him on the left side of his lower back before running away.

As soon as Officer Ducre could free himself, he got up and continued to chase Toms. Officer Ducre lost sight of Toms for two to three minutes. Officer Ducre

2

searched for Toms, using a flashlight to look in the dense brush. When Toms stuck his leg out from beneath some shrubs, Officer Ducre tripped and fell to the ground.

> There's a big huge concrete pillar that holds up a bridge. I was walking around that area. I was kind of doing a side step shuffle, and at the last second I kind of turned my flashlight over to where this pillar was, where there's some shrubs and I saw a leg sticking out, but I accidentally shined my light in that area and then I tripped over that leg. So I fell over, landed on my right side, got up, and realized that there was a person hiding there.
>
> . . . .
>
> Q.   Did you feel any pain when you had been tripped?
> A.   I rolled awkwardly on the right side of my neck, and . . . felt like I had strained a muscle or something.

Officer Ducre immediately got up, drew his handgun, and told Toms to show his hands. Toms did not follow Officer Ducre's command. When Toms started to stand up, Officer Ducre "took him down to the ground and . . . advised radio that I was in a fight." Officer Ducre placed Toms in handcuffs and arrested him. Because Officer Ducre was injured, he lay on the ground next to Toms until the other police officers arrived a few moments later.

In a search incident to arrest, the police found two pipes in Toms' pockets. Forensic analysis of the pipes revealed residue containing cocaine.

The State charged Toms with vehicle prowl in the second degree, count I; assault of a law enforcement officer in the third degree, count II; and possession of cocaine in violation of the Uniform Controlled Substances Act, count III. At trial, the State called a number of witnesses, including Hooper and Officer Ducre. Toms did not testify. In closing argument, the State argued Toms assaulted Officer Ducre by kicking him in the back and tripping him. The jury convicted Toms as charged. Toms appeals his conviction of assault in the third degree.

3

ANALYSIS

Toms contends the court erred in failing to give a unanimity instruction for the crime of assault in the third degree. Toms asserts the State presented evidence of two acts of assault: that Toms kicked Officer Ducre and then later Toms tripped Officer Ducre. Toms argues the failure of the State to elect which act formed the basis of the assault charge and the failure to give a unanimity instruction to the jury was not harmless beyond a reasonable doubt. The State asserts that a unanimity instruction was not necessary because the evidence established a continuing course of conduct rather than distinct acts.

We review alleged errors of law in jury instructions de novo. State v. Barnes, 153 Wn.2d 378, 382, 103 P.3d 1219 (2005). When the State presents evidence of several acts that could constitute the crime charged, the jury must unanimously agree on which act constituted the crime. State v. Kitchen, 110 Wn.2d 403, 411, 756 P.2d 105 (1988). To ensure jury unanimity, the State must either elect the act on which it relies, or the court must instruct the jury to unanimously agree that at least one particular act constituting the charged crime has been proved beyond a reasonable doubt. Kitchen, 110 Wn.2d at 411; see also State v. Petrich, 101 Wn.2d 566, 572, 683 P.2d 173 (1984). However, no election or unanimity instruction is required if the evidence establishes a "continuing course of conduct." Petrich, 101 Wn.2d at 571.

We review the facts in a commonsense manner to determine whether there is a continuing course of conduct. Petrich, 101 Wn.2d at 571. Evidence that the charged conduct "occurred at different times and places tends to show that several distinct acts occurred." State v. Fiallo-Lopez, 78 Wn. App. 717, 724, 899 P.2d 1294 (1995).

4

Evidence that the defendant engaged "in a series of actions intended to secure the same objective supports the characterization of those actions as a continuing course of conduct." Fiallo-Lopez, 78 Wn. App. at 724.

Our courts have applied the continuing course of conduct exception to multiple acts of assault over a two-hour time period, resulting in a fatal injury, State v. Crane, 116 Wn.2d 315, 330, 804 P.2d 10 (1991); and to acts of assault occurring in one place, during a short period of time, by the same aggressor upon a single victim, in an attempt to secure sexual relations, State v. Handran, 113 Wn.2d 11, 17, 775 P.2d 453 (1989). Here, the evidence also shows a continuing course of conduct. The assaults of kicking and then tripping Officer Ducre occurred at the same place, against the same victim, within a very short span of time. A rational trier of fact could conclude that the acts shared the common objective of assaulting Officer Ducre to avoid arrest and escape.

We affirm the conviction of assault in the third degree.

WE CONCUR: