# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47212-1-II |
| Respondent, | |
| v. | |
| MICHAEL ELI McBEE, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. – Michael Eli McBee appeals his jury trial conviction for the second degree

assault of Deborah Headland. [1] He argues that (1) his right to a unanimous jury verdict was

violated because the trial court failed to give a unanimity instruction and the State failed to elect

what act constituted the assault of Deborah,[2] (2) his trial counsel provided ineffective assistance

of counsel by failing to request a unanimity instruction, and (3) the judgment and sentence does

not show that a second degree unlawful possession of a firearm charge (count VI) was dismissed.

Because the record shows that the State elected what act supported the assault charge involving

Deborah, McBee's unanimity instruction and ineffective assistance of counsel arguments fail. The

State, however, concedes that the judgment and sentence fails to note that the second degree

unlawful possession of a firearm charge was dismissed. Accordingly, we affirm the convictions

---

[1] The jury also convicted McBee of the second degree assault of Steve Norman, first degree burglary, and second degree malicious mischief. McBee also pleaded guilty to the second degree assault of Kevin Headland. McBee does not challenge these convictions.

[2] Because this case involves both Deborah Headland and her husband Kevin Headland, we refer to the Headlands by their first names to avoid confusion; we intend no disrespect.

and sentences but remand to the trial court to amend the judgment and sentence to reflect that count VI was dismissed with prejudice.

## FACTS

### I. BACKGROUND

McBee and Kevin Headland were neighbors. On March 18, 2013, they were involved in a physical altercation after McBee's dog wrapped its leash around Kevin's legs.

On March 26, Kevin was in his garage visiting and drinking beer with his friend Steve Norman. Kevin's wife Deborah arrived home and visited with the two men in the garage for a while. A short time later, McBee entered the garage and, apparently mistaking Norman for Kevin, started to shoot at Norman. McBee then looked at Norman and announced, "You are a dead mother f[***]er." 3 Report of Proceedings (RP) at 117-18.

Kevin ran out the side door of the garage, and fled to a neighbor's house. As he ran, Kevin saw a bullet tear up the grass at his feet. Kevin called 911 from the neighbor's house. As he made the call, he heard more gunfire from the direction of his house.

As Kevin fled, Norman attempted to run into the Headland's house, but he was unable to enter through the adjoining door because it was locked. When he turned around, McBee was about six feet away pointing a gun at his (Norman's) face. Norman plead for his life, and McBee told him to get out. Norman fled to a neighbor's house, and the neighbor called the police. Norman then heard more gunfire.

According to Kevin, Deborah was just entering the house when the shooting started. According to Norman, Deborah was still in the garage when the shooting started, and she fled into the house. But, according to Deborah, she had already left the garage and was in the house doing

dishes when the shooting started; she locked the door between the garage and the house when she heard the gunfire and called 911.

While Deborah was calling 911, McBee come around the back of the house and fired a single shot through the sliding glass door, shattering the door. Deborah later testified that when McBee fired through the glass door, she "felt it was aimed right at [her]." 3 RP at 189. McBee then walked into the house through the shattered glass door; attempted to open the bedroom doors, apparently in search of Kevin; and told Deborah that he was "going to kill the son of a bitch." 3 RP at 185. When he was unable to find Kevin, McBee left the house through the glass door, walked to his house less than a quarter of a mile away, and refused to leave his house for several hours before surrendering to law enforcement.

## II. PROCEDURE

The State charged McBee with attempted first degree murder of Kevin (count I), first degree assault of Deborah (count II), first degree assault of Norman (count III), first degree burglary (count IV), second degree malicious mischief (count V), and second degree unlawful possession of a firearm (count VI).[3] The parties agreed to dismiss the second degree unlawful possession of a firearm charge. The remaining charges were tried by a jury.

Deborah, Kevin, and Norman testified as described above. McBee presented voluntary intoxication and diminished capacity defenses.

---

[3] The State also alleged firearm sentencing enhancements on charges I through V.

No. 47212-1-II

A. JURY INSTRUCTIONS

In discussing the proposed jury instructions, the parties discussed the propriety of the State's proposed transferred intent instruction.[4] During the course of this discussion, the trial court asked defense counsel whether it should give a *Petrich*[5] unanimity instruction on count II, the first degree assault charge of Deborah. Defense counsel initially stated that he did not "think so," but he later stated that if the trial court gave the transferred intent instruction that the court "could give the *Petrich* instruction," but counsel was "not necessarily sure it is necessary." 6 RP at 519.

The court's instructions to the jury included the transferred intent instruction immediately after instructing the jury on count III, the assault of Norman. The court's instructions did not, however, contain any language limiting the application of the transferred intent instruction to count III or a *Petrich* instruction.

During its closing argument, when discussing count I (the attempted murder of Kevin) and count III (the assault of Norman), the State acknowledged that the testimony differed on where Deborah was when McBee fired the initial shots:

> Now, again, there is some discrepancy between the witnesses, which was Deborah Headland in the garage or had she already gone in the house? I believe it was Stephen Norman believes she was in the garage, perhaps it was Kevin. At any rate, there is a discrepancy as to whether she was in the garage or not. She testified she had gone inside the house. She testified that she had done that before any shooting had happened whatsoever.

---

[4] Defense counsel argued that the State intended to argue transferred intent as to both assault charges, counts II and III. The State, however, asserted that it was only planning to argue transferred intent as to count III, which pertained to the assault of Norman.

[5] *State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984).

No. 47212-1-II

8 RP at 726. After acknowledging this discrepancy in the testimony, the State then returned to discussing counts I and III, focusing in large part on the fact McBee had shot at Norman when he (McBee) fired into the garage.

When the State presented its argument about count II, however, its argument focused entirely on the shots McBee fired when Deborah was inside the house.

> These two photos show the immediate aftermath of the shooting in the garage. This is taken from approximately the back door into the house where Deborah Headland was. Remember, she was on the phone with 911 in the kitchen at the time the defendant came to the back door. She had seen Kevin Headland go by. She did not see the defendant until he blasted out the back door. She's standing in the kitchen in the line of fire. She described the bullet as ricochetting around her house. If you recall the testimony of the forensic officer, he found the bullet laying on the couch, lo and behold.

8 RP at 742-43.

B. VERDICTS AND JUDGMENT AND SENTENCE

The jury found McBee guilty of the lesser included offenses of second degree assault on counts II and III, first degree burglary, and second degree malicious mischief. The jury was unable to reach a unanimous verdict on the attempted first degree murder charge, and the trial court declared a mistrial on that charge. McBee later pled guilty to a lesser charge of second degree assault against Kevin. The judgment and sentence does not mention that count VI had been dismissed.

McBee appeals his conviction for the second degree assault of Deborah and argues that the judgment and sentence failed to state that count VI had been dismissed.

5

ANALYSIS

I. UNANIMITY ISSUES

McBee argues that his right to a unanimous verdict on count II, the assault charge related to Deborah, was violated because the State failed to elect what act constituted the assault and the trial court did not give a unanimity instruction. He contends that because there was conflicting evidence regarding whether Deborah was in the garage when McBee fired the first shots, the jury could have found that the assault occurred when he fired the shots in the garage or when he shot into the house through the sliding glass door.[6] He further argues that defense counsel's failure to request a unanimity instruction was ineffective assistance of counsel. The State argues that no unanimity instruction was required because the State elected the assaultive act in its closing argument.[7] We agree with the State.

A. LEGAL PRINCIPLES

Criminal defendants have a right to a unanimous jury verdict. Wash. Const. art. I, § 21; *State v. Sandholm,* 184 Wn.2d 726, 732, 364 P.3d 87 (2015). If the State presents evidence of multiple acts that could constitute the crime charged, the State "must tell the jury which act to rely on in its deliberations or the court must instruct the jury to agree on a specific criminal act." *State*

---

[6] McBee also argues that (1) the two possible assaults against Deborah were not a continuing course of conduct and (2) the lack of a unanimity instruction was not invited error. Because we hold that the State elected the specific act, we do not address these arguments.

[7] The State also argues that (1) McBee invited any potential error by refusing the trial court's invitation to provide a unanimity instruction, and (2) no unanimity instruction was required because the assault was based on a continuing course of conduct. Because we hold that the State elected the specific act during its closing argument, we do not address these arguments.

*v. Kitchen*, 110 Wn.2d 403, 409, 756 P.2d 105 (1988) (citing *State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984); *State v Workman*, 66 Wash. 292, 294-95, 119 P. 751 (1911)), *abrogated on other grounds by In re Pers. Restraint of Stockwell*, 179 Wn.2d 588, 316 P.3d 1007 (2014). Failure to do so is constitutional error because of "the possibility that some jurors may have relied on one act or incident and some another, resulting in a lack of unanimity on all of the elements necessary for a valid conviction." *Kitchen*, 110 Wn.2d at 411.

But the multiple acts instruction applies only when the State fails to elect the act upon which it will rely for conviction. *State v. Carson*, 184 Wn.2d 207, 227-28, 357 P.3d 1064 (2015). Our Supreme Court recently clarified what constitutes a successful election by the State:

> We have never held that the State's election of an act must be ratified by the court or incorporated into the charging document or jury instructions in order to be effective. On the contrary, and as our use of the phrase "*tell* the jury" in *Kitchen* suggests, [110 Wn.2d at 409] (emphasis added), an election can be made by the prosecuting attorney in a verbal statement to the jury as long as the prosecution "clearly identifie[s] the act upon which" the charge in question is based. *State v. Thompson*, 169 Wn. App. 436, 474-75, 290 P.3d 996 (2012) ("[b]ecause the State clearly identified the act upon which the sexual motivation allegation was based" in its closing argument, "no unanimity instruction was necessary"); *compare, e.g., id.*, and *In re Pers. Restraint of Delgado*, 160 Wn. App. 898, 902, 251 P.3d 899 (2011) (prosecutor "'clearly elected . . . the criminal acts associated with the two counts during its closing arguments'". . . , with *State v. Williams*, 136 Wn. App. 486, 497, 150 P.3d 111 (2007) (no clear election in closing argument where prosecutor "emphasized" one act over others but did not "expressly elect to rely on" one act "in seeking the conviction").

*Carson*, 184 Wn.2d at 227-28 (some alterations in original)(footnote omitted).

B. STATE'S ELECTION

As noted above, although the State mentioned that there was conflicting evidence as to whether Deborah was in the garage when McBee started firing his gun into the garage, the State's argument about count II clearly directed the jury to consider McBee's shooting into the house

7

through the sliding glass door in relation to this charge. Although the State discussed its transferred intent theory, nothing in the State's argument suggested that it was basing count II on the shooting in the garage. Thus, the State elected the act that was the basis of count II and no unanimity instruction was required.

McBee also argues that defense counsel's failure to request a unanimity instruction was ineffective assistance of counsel. To establish ineffective assistance of counsel, McBee must show both deficient performance and resulting prejudice. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Because no unanimity instruction was required, McBee does not show that defense counsel's failure to request such an instruction was deficient performance. Accordingly, these arguments fail.

## II. FAILURE TO NOTE COUNT VI'S DISMISSAL

Finally, McBee argues that the judgment and sentence does not state that count VI, the second degree unlawful possession of a firearm charge, was dismissed. The State concedes that the judgment and sentence does not reflect that count VI was dismissed and asks that we remand the case for entry of "an order amending the judgment to reflect the dismissed count or an independent order doing the same." Br. of Resp't at 13. The judgment and sentence does not state that count VI was dismissed. We accept the State's concession.

No. 47212-1-II

Accordingly, we affirm the convictions and sentences but remand to the trial court to amend the judgment and sentence to reflect that count VI was dismissed with prejudice.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

JOHANSON, P.J.

MELNICK, J.

9