# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

STATE OF WASHINGTON, ) No. 73804-6-I
)
               Respondent, )
)
          v. )
)
EDWARD T. WASHINGTON, ) UNPUBLISHED OPINION
)
               Appellant. ) FILED: January 17, 2017
_____)

VERELLEN, C.J. — The State charged Edward Washington by amended

information with felony telephone harassment. King County Superior Court denied

Washington's request for a State v. Petrich[1] instruction because Washington's calls

were a continuing course of conduct. A jury found Washington guilty as charged and

the trial court sentenced him to nine months in jail. Because Washington's phone calls

served the same objective and occurred within the same time frame and place,

Washington was not entitled to a Petrich instruction, nor was the State required to elect

which act constituted the crime. Because the trial court determined Washington's

indigency, we presume indigency throughout his appeal and decline to award appellate

costs.

      We affirm.

---

    [1] 101 Wn.2d 566, 683 P.2d 173 (1984), overruled in part on other grounds, State
v. Kitchen, 110 Wn.2d 403, 756 P.2d 105 (1988).

## FACTS

Edward Washington was charged by amended information with felony telephone harassment. At trial, Faye Givens testified that she received four telephone calls from Washington on March 10, 2015. Givens testified she received the first call at 10:20 a.m., the second at 11:10 a.m., the third at 11:40 a.m., and the fourth at 11:41 a.m. Givens testified that she did not answer the 11:40 a.m. call. Givens called 911 at 11:43 a.m.

Givens testified that in the first call, Washington said he "was going to come shoot [Givens' son], smoke us, and blow up my house and all this kind of stuff, and shoot me in the process."[2] Givens said Washington also told her that he was going to come to her house, shoot up her house, "he had a 45, and [she knew] that he would do it."[3] Washington also told Givens that "[h]e was serious. He told me I could call the police. Tell me to get ready, prepare for a funeral."[4] Givens believed that in Washington's second call, he was talking about blowing up her house.

On cross-examination, Givens said she could not remember whether Washington made the threats to "smoke everybody" in the first or second call. Givens testified she told police that, in the second call, Washington said, "[S]tay where you are because I'm going to come and smoke all of you."[5] Givens also said that she told police that in the

---

[2] Report of Proceedings (RP) (July 15, 2015) at 123. Givens also testified that she had heard that term before "[i]n the context that they were going to shoot someone." Id. at 125.

[3] Id. at 126.

[4] Id.

[5] RP (July 16, 2015) at 20.

"third phone call," Washington told her "I'm coming to your house to shoot up everybody. You can tell your son . . . too."[6]

Givens testified she told police that Washington said he was going to bomb her house, but acknowledged that threat was not in her initial statement to police. Givens did not remember specifically what Washington said in the final call, nor did she remember the order of all of the conversations. All the threats that Washington made came during the three phone calls Givens answered.

Washington proposed a Petrich unanimity instruction. The State argued the calls were a continuing course of conduct, and the trial court concluded that a Petrich instruction was not appropriate. In its closing argument, the State argued:

> So how, if it's three calls, how is it one call in the instruction? And that's simple. That's because on that day, Mr. Washington engaged in a continuing course of conduct. When he picked up the phone that first time and called Faye Givens, he was intending to harass her, he was intending to intimidate her, and he made the threats against her two sons in those three calls. So although there was a break in the action, that it wasn't one long continuous call, and you'll see that, there's not a very lengthy call, there are three. His intent was the same. She's the person who received all three calls, he's the person who made all three calls, and the threats span those three calls.[7]

A jury found Washington guilty as charged. The trial court sentenced Washington to nine months in jail and waived all nonmandatory legal financial obligations.

Washington appeals.

---

[6] Id.

[7] Id. at 90-91.

## ANALYSIS

### I. Jury Unanimity

Washington argues the trial court violated his right to a unanimous jury verdict when it did not give a unanimity instruction and the State did not elect which threat was the basis for the charge. The State argues Washington was not entitled to a unanimity instruction, or election because Washington's threats were part of a continuing course of conduct. We agree.

Criminal defendants have a right to a unanimous jury verdict.[8] When the State presents several acts that could constitute the crime charged, the jury must unanimously agree on a specific act.[9] To ensure jury unanimity, "[t]he State must tell the jury which act to rely on in its deliberations or the [trial] court must instruct the jury to agree on a specific criminal act."[10] However, the State does not need to make an election and the court does not need to give a unanimity instruction if the evidence shows that the defendant was engaged in a continuous course of conduct.[11] To determine whether the defendant's conduct constitutes one continuing criminal act, "the facts must be evaluated in a common sense manner."[12]

---

[8] WASH. CONST. art. 1, § 21; State v. Ortega-Martinez, 124 Wn.2d 702, 707, 881 P.2d 231 (1994).

[9] State v. Kitchen, 110 Wn.2d 403, 409, 756 P.2d 105 (1988).

[10] Id. at 409; Petrich, 101 Wn.2d at 572.

[11] State v. Handran, 113 Wn.2d 11, 17, 775 P.2d 453 (1989); State v. Craven, 69 Wn. App. 581, 587, 849 P.2d 681 (1993).

[12] Petrich, 101 Wn.2d at 571; Craven, 69 Wn. App. at 588; State v. Fiallo-Lopez, 78 Wn. App. 717, 724, 899 P.2d 1294 (1995).

This court has considered various factors to determine whether a case involved a continuing course of conduct.[13] Evidence that a defendant engaged in a series of actions intended to "secure the same objective supports the characterization of those actions as a continuing course of conduct rather than several distinct acts."[14] Courts have also looked to whether the acts occurred in a separate time frame or place.[15]

Washington contends there were three separate acts since he called Givens four times and she answered three of the calls. Because there were three phone conversations and Givens' testimony about the substance of those calls differed from the police reports, Washington contends that jurors could have "entertained reasonable doubt as to which call or calls contained threats to kill."[16] Alternatively, Washington argues the State failed to elect a single phone call that constituted the crime of felony telephone harassment. Washington argues his acts did not constitute a continuing course of conduct because of the time between the calls.

---

[13] Fiallo-Lopez, 78 Wn. App. at 724.

[14] Id. at 726 ("Thus, the fact that the two deliveries here occurred at different times and places is outweighed by the commonsense consideration that they were both intended for the same ultimate purpose, delivery of cocaine by Fiallo-Lopez to Cooper."); Handran, 113 Wn.2d at 17 (the two alleged assaults did not require a unanimity instruction because the defendant's actions showed a continuing course of conduct intended to secure sexual relations with the victim rather than several distinct acts); State v. Crane, 116 Wn.2d 315, 330, 804 P.2d 10 (no unanimity instruction required where multiple assaults during two-hour period resulted in child's death), cert. denied, 501 U.S. 1237, 111 S. Ct. 2867, 115 L. Ed. 2d 1033 (1991); State v. Marko, 107 Wn. App. 215, 220, 27 P.3d 228 (2001) (threatening statements directed at different people during a 90-minute time period formed a continuing course of conduct that did not require a unanimity instruction or election by the State).

[15] Marko, 107 Wn. App. at 220-21 (citing Petrich, 101 Wn.2d at 571).

[16] Appellant's Br. at 6.

But here, evaluating the evidence in a commonsense manner, Washington's threats were clearly part of a continuing course of conduct. His threats were intended to achieve the same common objective: to harass, intimidate, and torment Givens.

Over the course of the phone calls, Washington told Givens (i) he was going to "come shoot [Givens' son], smoke [them], and blow up [her] house and all this kind of stuff, and shoot [her] in the process"; (ii) he was going to come to her house and shoot up her house; and (iii) he had a .45 and Givens knew that Washington would use it.[17]

Washington's repeated phone calls to Givens show that the threats were part of a continuing course of conduct intended to frighten and harass Givens. Washington's threats also occurred within the same time frame and place. Washington made the threats over the phone to Givens on March 10, 2015, between 10:20 a.m. and 11:41 a.m.

Washington's right to a unanimous jury verdict was not violated. Evaluating the facts in a commonsense manner, the threats Washington made to Givens constituted the same course of conduct and the trial court did not need to provide a unanimity instruction, nor did the State need to elect which threat was the basis for the charge.

## II. Appellate Costs

Washington argues that if the State is the substantially prevailing party on appeal, the panel should not impose costs against him because he is indigent. The State argues the issue of costs is premature.

---

[17] RP (July 15, 2015) at 123-30.

Appellate courts may require an adult offender convicted of an offense to pay appellate costs.[18] The commissioner or clerk will award costs to the State if the State is the substantially prevailing party on appeal, "unless the appellate court directs otherwise in its decision terminating review."[19]

A determination of a criminal defendant's indigency is entrusted to the trial judge whose finding of indigency this court respects unless it is shown good cause not to do so.[20] Under the Rules of Appellate Procedure, where a party has been granted an order of indigency, the party and the party's counsel must bring to the attention of the trial court any significant improvement during review in the party's financial condition.[21] This court gives "a party the benefits of an order of indigency throughout the review unless the trial court finds the party's financial condition has improved to the extent that the party is no longer indigent."[22]

The trial court issued an order finding Washington indigent and authorizing him to appeal in forma pauperis. The trial court has not found that his financial condition has improved or is likely to improve. The State offers no new financial information. Therefore, we presume that Washington remains indigent.[23] Under these circumstances the issue of costs is not premature. Even though the State is the

---

[18] RCW 10.73.160(1).

[19] RAP 14.2.

[20] State v. Sinclair, 192 Wn. App. 380, 393, 367 P.3d 612 (2016), review denied, 185 Wn.2d 1034, 377 P.3d 733 (2016).

[21] RAP 15.2(f).

[22] Id.; Sinclair, 192 Wn. App. at 393.

[23] Sinclair, 192 Wn. App. at 393.

substantially prevailing party on appeal, we conclude that an award to the State of appellate costs is not appropriate.

We affirm.

WE CONCUR:

Trickey, J