IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 82215-2-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RODOLFO ANTONIO BENITEZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — Rodolfo Benitez challenges his conviction for attempted residential burglary, arguing that the State failed to provide sufficient evidence that he intended to enter and took a substantial step toward entering Latasha Cullison's apartment. But based upon Benitez's actions, any rational trier of fact could have found that Benitez intended to enter Cullison's apartment to assault her and that he took a substantial step to do so. Therefore, sufficient evidence supports the essential elements of attempted residential burglary beyond a reasonable doubt.

Benitez also challenges his convictions for felony harassment and fourth degree assault arguing that the trial court erred in failing to provide a Petrich[1] unanimity instruction on both counts. But because the threatening text messages Benitez sent Cullison were a "continuing course of conduct" and the court's limiting

_____

[1] State v. Petrich, 101 Wn.2d 566, 683 P.2d 173 (1984).

instruction did not permit the jury to consider the event in Tacoma as evidence of a second assault by choking, we presume the jury followed the court's limiting instruction. Benitez failed to demonstrate a unanimity instruction was required.

Therefore, we affirm.

## FACTS

Latasha Cullison met Rodolfo Benitez while working at the McDonald's restaurant in Auburn, Washington. Cullison and Benitez became friendly and regularly communicated by text message. Benitez also regularly drove Cullison to and from work and knew where she lived.

On April 26, 2020, Benitez drove Cullison to run errands. At some point, one of Benitez's friends joined them, and Benitez handed Cullison an object that she believed to be a gun. Cullison placed the object on the floor of the vehicle.

Benitez drove his friend to the Auburn Transit Center. Cullison attempted to exit the vehicle because she had a "bad feeling . . . that something wasn't right."[2] But Benitez grabbed her "around the throat" with his "arm" and "yanked" her back in the vehicle.[3] Cullison was in "pain" and "screamed" that Benitez was "hurting" her, "hoping somebody would see it or hear it or do something."[4]

---

[2] Report of Proceedings (RP) (Nov. 3, 2020) at 780-81.

[3] Id. at 781.

[4] Id. at 781-83.

2

Soon after, Benitez began driving the vehicle again "super-fast down the freeway."[5]  He told Cullison that he would "kill [them] both."[6]  Cullison asked if Benitez would stop the vehicle so they could "get cigarettes."[7]  Benitez agreed, exited the freeway, and parked the vehicle at the Red Wolf Smoke Shop in Tacoma.  When Cullison tried to exit the vehicle, Benitez "yanked [her] by the arm," wrapped his arm "around the side of her body," and "wouldn't let [ ] go."[8]  But eventually, he allowed her "to walk up to the window" of the smoke shop.[9]

Amy Balbi, the cashier at the smoke shop, saw that Cullison was "visibly really upset."[10]  Balbi asked Cullison if "everything was okay" and Cullison responded "he's going to kill me."[11]  Seconds later, Benitez pulled his vehicle up to the window.  Cullison told Benitez that Balbi was a "friend" and that Balbi would drive her home.  Balbi reassured Benitez that she knew Cullison in an attempt "to play along with what [Cullison] felt was safe."[12]  After Benitez left, Cullison told Balbi that she saw Benitez driving "back and forth" on "Pacific Highway" in front of

---

[5] Id. at 783.

[6] Id.

[7] Id.

[8] Id. at 785-86.

[9] Id. at 785.

[10] RP (Oct. 28, 2020) at 737.

[11] Id. at 738.

[12] Id. at 739.

the smoke shop.[13]  Eventually, "some regular customers" offered to take Cullison to her apartment.[14]

When they arrived at Cullison's apartment, the customers helped Cullison barricade the windows.  Cullison locked the front door to her apartment, locked herself in the bathroom, and called her mother, Michelle Barber.  While in the bathroom, Cullison heard "banging and pounding" at her front door and received threatening text messages from Benitez including that he was "outside" her apartment.[15]

Barber called 911, and the operator dispatched Auburn police officers to Cullison's apartment.  The officers drove to Cullison's apartment with their emergency lights and sirens activated.  When the officers arrived, Cullison's door was "cracked open" and Cullison "appeared very fearful, scared, and hysterical."[16] Benitez was not present.  The State charged Benitez with second degree assault, felony harassment, and attempted residential burglary.

The jury convicted Benitez of felony harassment, and attempted residential burglary as well as the lesser degree offense of fourth degree assault.

Benitez appeals.

---

[13] Id. at 744.

[14] Id.

[15] RP (Nov. 3, 2020) at 792.

[16] RP (Oct. 28, 2020) at 674.

4

ANALYSIS

I.  Sufficiency of the Evidence

Benitez argues that the State presented insufficient evidence for the jury to convict him of attempted residential burglary.  Whether there is sufficient evidence to support a criminal conviction is a question of law we review de novo.[17]

In determining whether there is sufficient evidence to support a conviction "'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"[18]  When a defendant challenges the sufficiency of the evidence, we construe all reasonable inferences from the evidence in the State's favor and interpret that evidence "'most strongly against the defendant.'"[19]  "'A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom.'"[20]  "'Circumstantial evidence and direct evidence are equally reliable in determining

---

[17] State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016).

[18] State v. Scanlan, 193 Wn.2d 753, 770, 445 P.3d 960 (2019) (internal quotation marks omitted) (quoting State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980)).

[19] Id. (quoting State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).

[20] Id. (quoting Salinas, 119 Wn.2d at 201).

the sufficiency of the evidence.'"[21]  But "'inferences based on circumstantial evidence must be reasonable and cannot be based on speculation.'"[22]

RCW 9A.52.025 provides, "A person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle."  And a person attempts to commit a crime "if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime."[23]

Here, Officer Avalyne Peters, a patrol officer with the Auburn Police Department, testified that she drove to Cullison's apartment with her emergency lights and sirens activated and that when she arrived at Cullison's apartment, there was damage to the door.  She stated that "[t]here was a piece of the door frame on the ground and it appeared recent, especially since the door appeared to have been locked and then it was slightly open."[24]

Officer Nate Fry, another patrol officer with the Auburn Police Department, testified that "there appeared to be fresh damage to the door frame."[25]  He stated that there were "wood chips, partial bits of the wood from the door frame laying on

---

[21] Id. at 771 (internal quotation marks omitted) (citing State v. Kintz, 169 Wn.2d 537, 551, 238 P.3d 470 (2010).

[22] Id. (quoting State v. Vasquez, 178 Wn.2d 1, 16, 309 P.3d 318 (2013)).

[23] RCW 9A.28.020(1).

[24] RP (Oct. 28, 2020) at 673.

[25] Id. at 711.

the ground as if it had just been kicked in by either a foot, an object, something of that nature."[26]

Cullison testified that she entered her apartment, locked the door, and hid in the bathroom. She stated that while she was in the bathroom she "[k]ept hearing banging and pounding" at the front door and she received a text message from Benitez stating that he was "outside."[27] She testified that Benitez also sent her a text message that said "I'll break the door down if you don't talk to me."[28] She stated that during the "banging and slamming" she also heard "yelling while the pounding was taking place."[29] And she testified that the "yelling . . . sounded like" Benitez. Cullison also testified that Benitez sent her text messages stating that he would "get in" her apartment, that she should "be scared of" him, and that he would "be there to burn [her] in the bed."[30]

Barber testified that while she was on the phone with Cullison, she could hear "a lot of pounding" and "some voices that were muffled."[31]

Viewing the evidence in the light most favorable to the State, a rational trier of fact could have reasonably inferred that Benitez attempted to break into Cullison's apartment when he sent her text messages threatening to assault her

---

[26] Id.

[27] RP (Nov. 3, 2020) at 792.

[28] Id. at 821.

[29] Id. at 793.

[30] Id. at 821.

[31] Id. at 861.

and telling her he was outside, she locked the door to her apartment, she heard banging and pounding at the door, and when the responding officers arrived the door was slightly open and there appeared to be recent damage to the door. Based upon the State's evidence, a rational trier of fact could conclude that Benitez intended to break into Cullison's apartment to assault her and took a substantial step to do so. The State presented sufficient evidence to support the essential elements of attempted residential burglary beyond a reasonable doubt.[32]

II.  Unanimity Instruction

Benitez argues that the trial court erred in failing to provide a unanimity instruction to the jury on his charges for felony harassment and second degree assault. Whether a Petrich instruction was required is a question of law we review de novo.[33]

"To protect a criminal defendant's right to be convicted only if found guilty beyond a reasonable doubt, the jury must be unanimous as to the act constituting the crime charged."[34]  "When the prosecution presents evidence of multiple acts of

---

[32] Benitez argues his case is similar to State v. Jackson. But in Jackson, our Supreme Court considered whether malicious mischief was a lesser included offense within attempted burglary and whether a permissive inference instruction was properly given. Jackson is inapposite. 112 Wn.2d 867, 774 P.2d 1211 (1989).

[33] State v. Lee, 12 Wn. App. 2d 378, 393, 460 P.3d 701, review denied, 195 Wn.2d 1032, 468 P.3d 622 (2020) (citing State v. Boyd, 137 Wn. App, 910, 922, 155 P.3d 1888 (2007)).

[34] Id. at 392 (citing State v. Petrich, 101 Wn.2d 566, 569, 683 P.2d 173 (1984), overruled on other grounds by State v. Kitchen, 110 Wn.2d 403, 756 P.2d 105 (1988)).

like misconduct, any one of which could form the basis of a count charged, either the State must elect which of such acts is relied upon for a conviction or the court must instruct the jury to agree on a specific criminal act."[35] But no election or unanimity instruction is required if the evidence presented establishes that the defendant's actions constitute a "continuing course of conduct."[36] "We evaluate whether the evidence shows conduct occurring at one place or at many places, within a brief or long period of time, and to one or multiple different victims, and whether the conduct was intended to achieve a single or multiple different objectives."[37]

First, Benitez argues that the trial court erred in failing to provide a unanimity instruction on his felony harassment charge because "the State presented evidence of multiple threatening text messages and comments that could have formed the basis of the charge."[38]

Here, Cullison testified that after she arrived back at her apartment from the smoke shop, she began receiving threatening text messages from Benitez. Cullison testified that Benitez texted her that he was going to come to her house so that she could be his "woman," that he didn't need permission to "touch" her,

---

[35] Id. at 392-93 (citing State v. Coleman, 159 Wn.2d 509, 511, 150 P.3d 1126 (2007)).

[36] Id. (citing State v. Handran, 113 Wn.2d 11, 17, 775 P.2d 453 (1989)).

[37] Id. (footnote omitted).

[38] Appellant's Br. at 18.

and that she should be "scared."[39] Cullison continued to receive threatening text messages from Benitez into the next morning. But the messages all stemmed from a single conversation between Cullison and Benitez with Cullison engaging in the conversation intermittently, pleading with Benitez to leave her alone. Because the evidence establishes that Benitez's threats were sent to Cullison over text messages, he only threatened Cullison, and his threats all had a similar sentiment, that he wanted to harm Cullison, Benitez's actions constituted a continuing course of conduct. The trial court did not err in failing to provide a Petrich instruction.

Second, Benitez argues that the trial court erred in failing to provide a unanimity instruction to the jury on the assault charge because the State charged Benitez with one count of second degree assault but "presented evidence of two discrete acts of choking."[40]

Here, Cullison testified that she tried to exit Benitez's vehicle at the Auburn Transit Center but he "ended up grabbing me with his arm . . . around my neck" when he "yanked me back across the car."[41] She stated that at the smoke shop in Tacoma, he again would not let her out of the vehicle and wrapped his arm "around the side" of her body.[42]

During closing argument, the prosecutor stated that the evidence established the elements of second degree assault beyond a reasonable doubt

---

[39] RP (Nov. 3, 2020) at 824-26.

[40] Appellant's Br. at 20.

[41] RP (Nov. 3, 2020) at 781-82.

[42] Id. at 786.

based upon the "strangulation" of Cullison "at the Auburn Transit Center."[43]  But,

the court provided the jury with a limiting instruction stating that

> the incident [ ] at the Smoke Shop in Tacoma and its surrounding
> circumstances [ ] may be considered by you only for the purpose of
> considering the reasonableness of Latasha Cullison's fear; the intent
> of the defendant on the alleged crime of attempted residential
> burglary; and the sequence of events surrounding all charged
> offenses.  You may not consider it for any other purpose.[44]

And the prosecutor reiterated that instruction to the jury.[45]  The court also told the

jury that the "lawyers' statements are not evidence.  The evidence is the testimony

and the exhibits.  The law is contained in my instructions to you.  You must

disregard any remark, statement, or argument that is not supported by the

evidence or the law in my instructions."[46]  The trial court did not err in failing to

provide a Petrich instruction.

Benitez argues that the prosecutor erred in closing and rebuttal argument

by conflating the two choking incidents four times in reference to the second

degree assault charge, such that it was not clear which act of "choking" the jury

concluded constituted the assault.  But in making his argument, Benitez takes the

prosecutor's comments out of context.

Three of the prosecutor's comments referencing both assaults occurred

when the prosecutor was explicitly discussing the court's limiting instruction that

---

[43] Id. at 942-43.

[44] CP at 63.

[45] RP (Nov. 3, 2020) at 948-49.

[46] CP at 63.

11

both incidents could be used by the jury to establish Cullison's fear, Benitez's intent during the attempted robbery, and the sequence of events. Specifically, during closing argument, the prosecutor stated, "And here we have a limiting instruction that tells you that you can take in[to] consideration . . . the sequence of events: [Cullison went] to leave the car. She was strangled, prevented. They drove to Tacoma. She tried to leave the car again. She was strangled again."[47] During rebuttal argument, the prosecutor stated, "Look at the sequence of events. Next stop was Tacoma. . . . He prevented [her again from leaving the car.] And the way again, by choking, arm around her neck from behind."[48] And again during rebuttal argument the prosecutor stated, "Look at your jury instructions. . . . [T]hose text messages are admitted into evidence for the purpose to take that intent into consideration. Sequence of events. She got strangled once, twice."[49]

The only other comment the prosecutor made was in reference to the lesser crime of fourth degree assault. The prosecutor misstated that Benitez "chose to put his arm around her shoulder, not around her waist, around her neck. Not once, twice."[50] We acknowledge that in referencing the court's limiting instruction and the lesser crime of fourth degree assault, the prosecutor repeatedly mischaracterized the incident in Tacoma as a strangulation. But the State's evidence established that Benitez only placed his arm around Cullison's neck

---

[47] RP (Nov. 10, 2020) at 954.

[48] Id. at 980.

[49] Id. at 981.

[50] Id. at 959.

12

during the Auburn incident, not the Tacoma incident. And the court's limiting instruction precluded the jury from considering the Tacoma incident as a second assault by choking. "Juries are presumed to follow their instructions absent evidence to the contrary."[51] Benitez fails to offer any evidence to support his contention that the prosecutor's references to both incidents in closing and rebuttal argument prohibited the jury from following the instructions as set out by the court. In this narrow context of whether a unanimity instruction was required for the assault charge, the trial court did not err.

Therefore, we affirm.

WE CONCUR:

---

[51] State v. Sullivan, 3 Wn. App. 2d 376, 380, 415 P.3d 1261 (2018) (citing State v. Dye, 178 Wn.2d 541, 556, 309 P.3d 1192 (2013)).