# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  47687-8-II |
| Respondent, | |
| v. | |
| ANDRES SEBASTIAN FERRER, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Andres Sebastian Ferrer appeals his conviction and sentence for one count of second degree assault and one count of felony harassment.  Ferrer argues that (1) the trial court erred when it determined his convictions were not the same criminal conduct under RCW 9.94A.589(1)(a) and (2) his 50-month exceptional sentence is clearly excessive.  In his Statement of Additional Grounds (SAG), Ferrer claims that the trial court made several evidentiary, instructional and sentencing errors.

We hold that (1) the trial court did not err when it determined that Ferrer's second degree assault and felony harassment convictions were separate and distinct offenses and not the same criminal conduct, and (2) Ferrer's 50-month sentence is not clearly excessive.  As to Ferrer's SAG claims, we hold that Ferrer waived any challenges to the trial court's admission of the photographs and the trial court's jury instructions on substantial bodily harm and disfigurement; Ferrer was not

entitled to a *Petrich*[1] instruction on his felony harassment charge; and the sentencing court properly imposed a 10-year no-contact order, but exceeded its authority in ordering Ferrer to seek mental health treatment. Thus, we affirm Ferrer's convictions, reverse the mental health sentencing condition, and remand with instructions to the sentencing court to strike the mental health evaluation and treatment condition from Ferrer's judgment and sentence.

FACTS

A. BACKGROUND FACTS

Ferrer and Kristina Ferrer[2] were married in 2010. They have two daughters together, and Kristina has an older daughter, AC,[3] from a previous relationship. In January 2014, after Ferrer and Kristina separated, Ferrer lived with his sister and Kristina lived with her daughters in the family's home in Vancouver, Washington.

Ferrer would stop by the family home to get belongings or to see his two daughters. On March 22, Ferrer visited the home during the day, returning later in the evening while Kristina was at a barbeque with her two younger daughters. AC was at home when Ferrer arrived sometime between 8:30 p.m. and 9:30 p.m., encountering Ferrer in the hallway outside her bedroom. Ferrer left the home.

---

[1] *State v. Petrich,* 101 Wn.2d 566, 683 P.2d 173 (1984), *overruled on other grounds by State v. Kitchen,* 110 Wn.2d 403, 756 P.2d 105 (1988).

[2] We refer to parties with the same last name by their first name for clarity and intend no disrespect.

[3] AC was a minor in March 2014; therefore, we use the minor witness's initials to maintain privacy.

Kristina returned home around 11:00 p.m., and AC helped her carry the smaller child upstairs. AC and Kristina put both girls in Kristina's bedroom. AC went downstairs, and upon returning upstairs, saw Ferrer jump out of Kristina's bedroom closet and start yelling at Kristina.

Ferrer pushed Kristina down on the bed next to their young daughters, pinning her down and punching her about the head and face. The girls woke up and began screaming and crying. AC called 911. Throughout the assault, Ferrer threatened to kill Kristina, and then as he left the bedroom, he apologized to his daughters and then told Kristina, "[D]ivorce me and you'll die." II Verbatim Report of Proceedings (VRP) at 307. As Ferrer walked out the door into the hallway, he punched picture frames on the wall and called back to Kristina, "[N]ext time I see you, you're dead." II VRP at 308. When he left the house, Ferrer asked AC if she was on the phone with 911 and suggested that she check on Kristina because, "She might be dead." II VRP at 234-35.

At trial, Ferrer admitted that he returned to the family home a number of times that evening, and that he encountered AC at home alone. Ferrer stated that he arrived at the house the last time at 10:45 p.m., and that he parked his car away from the house because he knew if Kristina saw his vehicle she would not come inside the house. Ferrer also admitted that he hid in the closet when he heard Kristina's car pull up, that he punched her a number of times, and that he became aware that his young daughters were on the bed when he hit Kristina and knew that they were screaming and crying.

B. PROCEDURAL FACTS

1. Trial

The State charged Ferrer with one count of second degree assault and one count of felony harassment based on the death threats Ferrer made to Kristina. Both charges carried a domestic

3

violence aggravator based on the fact that Kristina's three minor children were present during the assault.[4]

Before trial, the State moved to admit about 30 photographs of Kristina's injuries. The trial court examined each photograph, requiring the State to make an initial offer of proof as to each. During the hearing, the State withdrew nine disputed photographs of Kristina's injuries, and the trial court excluded 12 photographs due to their cumulative nature or poor quality and reserved ruling on the admissibility of the remaining photographs.

During trial, the State offered 20 photographs of Kristina's injuries from the evening of March 22 and then from a week later to show bruising and the extent of her injuries. The trial court admitted the 20 photographs without objection.

Ferrer proposed a *Petrich*[5] instruction, arguing that there were multiple allegations of death threats during the course of the assault, that each were of a "different character," and that the State should have to "pick one." IV VRP at 573. The State argued that it was charging one allegation of felony harassment, that the multiple threats during the assault were one continuing course of

---

[4] RCW 9.94A.535(3)(h)(ii) provides in part:

> (h) The current offense involved domestic violence, as defined in RCW 10.99.020, or stalking, as defined in RCW 9A.46.110, and one or more of the following was present:
> . . . .
> (ii) The offense occurred within sight or sound of the victim's or the offender's minor children under the age of eighteen years.

[5] *Petrich,* 101 Wn.2d at 572 (the court held that where the State does not elect which act it will rely upon for a conviction on the charge, a *Petrich* instruction must be given that instructs the jury that all 12 jurors must unanimously agree that the same underlying criminal act has been proved beyond a reasonable doubt in order to ensure a unanimous verdict).

conduct, and that Kristina was "only . . . in fear once." IV VRP at 572. The trial court initially reserved ruling on Ferrer's requested *Petrich* instruction, but later agreed with the State and denied the instruction, finding that there were "no distinct time periods for which the incident stopped" because of the short time period and that the incident was a continuous course of conduct. IV VRP at 692.

The jury found Ferrer guilty of both charges. The jury also found that both crimes were "aggravated domestic violence offenses" because they were committed within the sight or sound of Kristina's three minor children, and that Ferrer and Kristina "were members of the same family or household." CP at 69-74.

2. Sentencing

The sentencing court determined that Ferrer's convictions for second degree assault and felony harassment required two separate criminal intents, and therefore, they did not constitute the same criminal conduct. Based on his offender score, Ferrer's standard sentence ranges were 12 to 14 months for second degree assault and 4 to 12 months for felony harassment, and 36 additional months above the standard sentence for the aggravators.

After reviewing the testimony of AC, Kristina, and Ferrer on the record, the sentencing court found that "substantial and compelling reasons" supported an exceptional sentence, and stated,

> [Y]ou brutally attacked your wife. That previous to this event you knew [AC] was in the house - and you knew that she was under the age of eighteen yet in your testimony at trial you seemed to blame her - meaning you - the victim here - Ms. Ferrer that she shoved you - that she did everything.
>
> That's not the case sir. You brutally attacked her in his manner - your children were on the bed. For those reasons I believe there are substantial and

compelling reasons to justify an exceptional sentence. The findings for the compelling and substantial reasons I've just outlined by way of the testimony of [AC], Kristina Ferrer and your minimization of what took place on the night in question.

V VRP at 863-64. The sentencing court found that because the evidence showed that Kristina's children were present during the assault, the jury's finding of the aggravating domestic violence factor supported an exceptional sentence.

The sentencing court then imposed the State's recommended sentence—50 months for second degree assault and 12 months for felony harassment, with both sentences running concurrently. The exceptional sentence for second degree assault included a standard sentence of 14 months and an additional 36 months—12 months for each of Kristina's three children present during the assault—above the standard base sentence.

The sentencing court also imposed a 10-year no-contact order, domestic violence evaluation and treatment, and mental health evaluation and treatment as conditions of Ferrer's sentence. Ferrer appeals.

## ANALYSIS

### I. SENTENCING

#### A. SAME CRIMINAL CONDUCT

Ferrer argues that the trial court erred in calculating his offender score when it failed to find that his convictions for second degree assault and felony harassment constituted the same criminal conduct. We disagree.

We review a trial court's determination of same criminal conduct for an abuse of discretion. *State v. Davis*, 174 Wn. App. 623, 641, 300 P.3d 465 (2013). The appellant bears the burden of

proving that the trial court abused its discretion by relying on unsupported facts, applying an incorrect legal standard, or adopting an unreasonable view. *Davis*, 174 Wn. App. at 641-42.

Offenses constituting the same criminal conduct are treated as one crime for sentencing purposes when they involve "the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a). Generally, courts construe the requirements of RCW 9.94A.589(1)(a) narrowly "'to disallow most claims that multiple offenses constitute the same criminal act.'" *Davis*, 174 Wn. App. at 641 (quoting *State v. Porter*, 133 Wn.2d 177, 181, 942 P.2d 974 (1997)).

When two statutes involve different criminal intents, they do not constitute the same criminal conduct. *State v. Chenoweth*, 185 Wn.2d 218, 223, 370 P.3d 6 (2016). However, offenses have the same criminal intent when, viewed objectively, the intent does not change from one offense to the next. *State v. Dunaway*, 109 Wn.2d 207, 215, 743 P.2d 1237 (1987). Often the analysis will "include the related issues of whether one crime furthered the other and if the time and place of the two crimes remained the same." *Dunaway*, 109 Wn.2d at 215. When the defendant has "the time and opportunity to pause, reflect, and either cease his criminal activity or proceed to commit a further criminal act," the crimes are separate and distinct from one another. *State v. Grantham*, 84 Wn. App. 854, 859, 932 P.2d 657 (1997).

Here, Ferrer's objective intent was not the same for the second degree assault and felony harassment. Ferrer formed his intent for the second degree assault when he hid in Kristina's bedroom closet, jumped out of the closet, yelled at Kristina, and pushed her down on the bed next to their two daughters, pinning her down and punching her in the head and face. Their two

7

daughters woke up and began to scream and cry. During this time, Ferrer repeatedly threatened that he was going to kill her, telling Kristina, "[Y]ou're going to die." II VRP at 299, 303.

Ferrer's intent in the crime of felony harassment was to put Kristina in fear that she would be killed in the future. He told Kristina that if she tried to divorce him, he would kill her. Then, after he stopped hitting her and got up from the bed, Ferrer threatened Kristina two more times, saying "[T]ry to divorce me[,] and you die," and as he walked out into the hall, punching the pictures on the wall, he turned back to Kristina and said, "[T]he next time I see you, you're dead." II VRP at 307-08. Kristina testified that she believed the threats.

In its ruling, the trial court stated,

> Mr. Ferrer's objective intent in assaulting Ms. Ferrer was to harm her, to establish some bodily injury not to legitimize the threat to kill. . . . [A]lthough the conduct was similar one crime was not - or did not further the other.

V VRP 857.

After the assault ended, Ferrer had time to pause and reflect on his conduct, and to form the intent to create fear and apprehension of future harm to Kristina—the felony harassment. These two later threats did not further the assault because the assault was already complete. The trial court found that

> [t]he Assault II was completed before the last threat was made. The Defendant's intent at that time shifted from placing [Kristina] in . . . apprehension of imminent fear during the assault to placing her in apprehension of future harm by making the last threat."
>
> . . . .
>
> [H]e made statements quite clear to the victim that he would kill her if he divorces her [sic] that he was going to kill her. That is a separate intent - that's different from the Assault II.

RP 857-58.  The evidence supports the trial court's finding that Ferrer had different intents when he committed second degree assault and then felony harassment.  Thus, the trial court did not abuse its discretion when it concluded that these convictions did not constitute the same criminal conduct.  Accordingly, Ferrer's argument fails.

B.  SENTENCE LENGTH

Ferrer also argues that the trial court's 50-month exceptional sentence was "clearly excessive."  Br. of Appellant at 21-22.  Ferrer does not challenge any of the sentencing court's findings or the sufficiency of the facts supporting the findings; he only challenges the imposed 50-month sentence as clearly excessive.  We disagree.

When reviewing an exceptional sentence, we ask whether (1) the sentencing court's reasons for an exceptional sentence are supported by the record, (2) those reasons justify a sentence outside the standard range, and (3) the sentence imposed is clearly excessive.  *State v. Kolesnik*, 146 Wn. App. 790, 802, 192 P.3d 937 (2008).

We review whether an exceptional sentence is clearly excessive for an abuse of discretion. *Kolesnik*, 146 Wn. App. at 805.  The sentencing court has "'all but unbridled discretion'" in determining the structure and length of an exceptional sentence.  *State v. France*, 176 Wn. App. 463, 471, 308 P.3d 812 (2013) (internal quotation marks omitted) (quoting *State v. Halsey*, 140 Wn. App. 313, 325, 165 P.3d 409 (2007)).

A sentence is "clearly excessive" if it is clearly unreasonable, "'*i.e.* exercised on untenable grounds or for untenable reasons, or an action that no reasonable person would have taken.'" *Kolesnik*, 146 Wn. App. at 805 (quoting *State v. Ritchie*, 126 Wn.2d 388, 393, 894 P.2d 1038 (1995)).  When based on proper reasons, we will find an imposed exceptional sentence to be clearly

excessive only if its length, in light of the record, "'shocks the conscience.'" *State v. Vaughn*, 83 Wn. App. 669, 681, 924 P.2d 27 (1996) (internal quotation marks omitted) (quoting *Ritchie*, 126 Wn.2d at 396).

The sentencing court found that the exceptional sentence was supported by Kristina's and AC's testimony, the jury's finding that both Ferrer's convictions were aggravated domestic violence convictions under RCW 10.99.020, and the fact that the incident occurred "within the sight or sound" of Kristina's three minor children. RCW 9.94A.535(h)(ii); CP at 91 (FF 1). Also, Ferrer admitted to parking away from the house so Kristina would not know he was there, and to hiding in her closet. He also admitted that he knew AC was present and that he saw his two young daughters on the bed next to Kristina crying and screaming when he assaulted Kristina. The sentencing court found that Ferrer continually minimized his role in the assault, blaming Kristina.

Given the testimony from AC and Kristina, and Ferrer's admissions that he hid, waited, and that he knew AC and his two young daughters were present for the assault, we hold that the trial court's sentence of 50 months was supported by the record and evidence, and that it does not shock the conscience. Thus, we affirm Ferrer's exceptional sentence of 50 months.

## II. STATEMENT OF ADDITIONAL GROUNDS (SAG)

Ferrer raises four additional claims in his SAG. For various reasons, three of his four claims fail.

### A. ADMISSION OF PHOTOGRAPHS

Ferrer claims that the trial court abused its discretion when it admitted a number of photographs of Kristina's injuries and that the cumulative nature of the photographs was prejudicial. But Ferrer failed to object at trail and thus failed to preserve this claim.

Absent manifest constitutional error, failure to preserve an issue waives that issue on appeal. *State v. Powell*, 166 Wn.2d 73, 82-83, 206 P.3d 321 (2009); RAP 2.5(a)(3). Evidentiary errors are not constitutional errors. *Powell*, 166 Wn.2d at 84. Thus, we decline to review this issue because Ferrer failed to preserve this argument.

B. TERMS OF SENTENCE—10-YEAR NO-CONTACT ORDER, MENTAL HEALTH TREATMENT

Ferrer claims that the 10-year no-contact order with Kristina[6] is excessive and that the ordered mental health treatment is an abuse of discretion. We disagree that the no-contact order is excessive, but we agree that the sentencing court exceeded its authority when it imposed the requirement for mental health treatment.

1. Standard of Review

Ferrer did not object to any of the sentencing conditions at his sentencing hearing; nevertheless, a defendant may challenge an erroneous or illegal sentence for the first time on appeal. *State v. Munoz-Rivera*, 190 Wn. App. 870, 890, 361 P.3d 182 (2015). We review the sentencing court's imposition of crime-related prohibitions and sentencing conditions for an abuse of discretion. *State v. Corbett*, 158 Wn. App. 576, 597, 242 P.3d 52 (2010).

---

[6] Ferrer claims that the no-contact order interferes with his parental rights and visitation with his daughters. The parenting plan was not before the sentencing court, and it made no rulings on Ferrer's parental rights. Thus, the matter of Ferrer's parental rights is not before us on appeal, and we decline to consider this argument.

### 2. No-Contact Order

A sentencing court may "impose and enforce crime-related prohibitions," including no-contact orders under former RCW 9.94A.505(8) (2010).[7] *State v. Amendariz*, 160 Wn.2d 106, 114, 156 P.3d 201 (2007). A sentencing court's authority to impose a no-contact order is independent of its authority to impose any conditions of community custody. *Amendariz*, 160 Wn.2d at 119. The statutory maximum for the defendant's conviction is an appropriate time limit for a no-contact order imposed under former RCW 9.94A.505(8). *Amendariz*, 160 Wn.2d at 119. Second degree assault is a class B felony, subject to a maximum statutory sentence of 10 years. RCW 9A.36.021(2)(a); RCW 9A.20.020(1)(b).

Here, the 10-year no-contact order was related to Ferrer's second degree assault conviction. Because the no-contact order does not exceed the 10-year statutory maximum sentence for Ferrer's conviction, we hold that the sentencing court did not abuse its discretion and that the no-contact order was proper.

### 3. Mental Health Treatment

A sentencing court may order a defendant to undergo a mental status evaluation and treatment under former RCW 9.94B.080 (2008),[8]

> [1] if the court finds that reasonable grounds exist to believe that the offender is a mentally ill person as defined in RCW 71.24.025, and [2] that this condition is likely to have influenced the offense.

---

[7] "[T]he law in effect at the time a criminal offense is committed controls the sentence." *State v. Acevedo*, 159 Wn. App. 221, 231, 248 P.3d 526 (2010). The legislature amended the statute in July 2015, after Ferrer's May 2015 sentencing hearing. Laws of 2015, ch. 287 § 10.

[8] The legislature amended this statute in July 2015. Laws of 2015, ch. 80, § 1.

Under former RCW 9.94B.080, a sentencing court was required to base its order for a mental health evaluation and treatment on a presentence report or mental status evaluation of the defendant's competency. There is no evidence in the record from Ferrer's May 2015 sentencing hearing of any testimony regarding Ferrer's mental health status, that he meets the definition of a mentally ill person under former RCW 71.24.025(18) (2013),[9] or that the sentencing court considered a presentence report recommending mental health treatment for Ferrer. Thus, because there was no evidence to support the sentencing condition, we hold that the sentencing court exceeded its authority in imposing the mental health evaluation and treatment as a condition of Ferrer's sentence, and we reverse and remand with instructions to the sentencing court to strike this condition from Ferrer's judgment and sentence.

C. JURY INSTRUCTIONS

1. Jury Instructions Nos. 9 and 10

Ferrer claims that jury instructions 9 and 10 were incorrect because they failed to adequately define "substantial bodily harm" and disfigurement. SAG at 9-11. Ferrer failed to object to the instructions on appeal. A party who fails to object to jury instructions waives a claim of error on appeal. RAP 2.5(a); *State v. Smith*, 174 Wn. App. 359, 364, 298 P.3d 785 (2013).

2. *Petrich* Unanimity Instruction

Ferrer also claims that the trial court abused its discretion when it declined his request to provide a *Petrich* unanimity instruction defining the acts of harassment. We disagree.

---

[9] Persons who are acutely, chronically, or "seriously disturbed." Former RCW 71.24.025(18) (2013). The legislature amended this statue in 2016. Laws of 2016, ch. 29, § 501.

We review a trial court's refusal to give a jury instruction for an abuse of discretion. *State v. Stacy*, 181 Wn. App. 553, 569, 326 P.3d 136 (2014). "'Criminal defendants in Washington have a right to a unanimous jury verdict.'" *Emery*, 161 Wn. App. 172, 198, 253 P.3d 413 (2011) (quoting *State v. Ortega-Martinez*, 124 Wn.2d 702, 707, 881 P/2d 231 (1994)); WASH. CONST. art. I, § 21. In some instances, the right to a unanimous jury verdict also includes the right to unanimity on the means by which the jury finds the defendant committed the crime. *Ortega-Martinez*, 124 Wn.2d at 707; *See also State v. Knutz*, 161 Wn. App. 395, 407-08, 253 P.3d 437 (2011) (stating that when the State presents evidence of multiple acts, unanimity is required for the particular criminal act) (citing *State v. Handran*, 113 Wn.2d 11, 17, 775 P.2d 453 (1989)).

In multiple acts cases, the State must inform the jury which act to rely on in its deliberations or the court must instruct the jury that they must all agree on a specific criminal act. *State v. Stockmyer*, 83 Wn. App. 77, 86, 920 P.2d 1201 (1996). The threshold for determining whether unanimity is required on an underlying means of committing a crime is whether sufficient evidence exists to support each of the alternative means presented to the jury. *Ortega-Martinez*, 124 Wn.2d at 707. When the State presents evidence of multiple "distinct criminal acts" supporting a charge, the jury must be unanimous on the specific conduct supporting the conviction. *State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984); *See also State v. Kitchen*, 110 Wn.2d 403, 412, 756 P.2d 105 (1988) (stating that the State alleged several acts and any one act could constitute the charged crime). However, no additional unanimity instruction is required if the evidence indicates a "'continuing course of conduct.'" *Knutz*, 161 Wn. App. at 408 (quoting *Handran*, 113 Wn.2d at 17).

Ferrer proposed a *Petrich* instruction at trial, arguing that there were five allegations of a death threat during the course of the harassment and that each threat was characteristically different. Ferrer argued that the State was required to "pick one" of the alleged threats as the foundation for the felony harassment conviction. IV VRP at 573. The State argued, and the trial court found, that based on the short time period during which Ferrer pushed Kristina on the bed, punched her in the face and head, and threatened her life five times, there were "no distinct time periods for which the incident stopped," and that the incident was a continuous course of conduct. IV VRP at 692. Thus, based on the record, we hold that Ferrer was not entitled to a *Petrich* instruction on the felony harassment charge.

CONCLUSION

We hold that the trial court did not err when it determined that Ferrer's second degree assault and felony harassment convictions were separate and distinct offenses and not the same criminal conduct, and that Ferrer's 50-month sentence is not clearly excessive. As to Ferrer's SAG claims, we hold that Ferrer waived his challenges to the trial court's admission of the photographs and the trial court's jury instructions on substantial bodily harm and disfigurement; Ferrer was not entitled to a *Petrich* instruction on his felony harassment charge; and the sentencing court properly imposed a 10-year no-contact order, but exceeded its authority in ordering Ferrer to seek mental

health treatment. Thus, we affirm Ferrer's convictions, but we reverse the mental health sentencing condition, and remand with instructions to the sentencing court to strike the mental health evaluation and treatment condition from Ferrer's judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

JOHANSON, P.J.

LEE, J.