Siddoway, C.J.
¶1 — Michael McNearney appeals his convictions for second degree theft by deception and fourth degree assault with sexual motivation. For the first time on appeal, he argues that because the State presented evidence of two assaults without electing the one on which it relied for its charge, the trial court erred in failing to provide the jury with a Petrich[1] instruction. He also contends the prosecuting attorney committed misconduct in closing argument by trivializing the State’s burden of proof.
¶2 In the published portion of this opinion, we address the assignment of error for failure to give a Petrich instruction. Because the two acts of assault were against the same victim, occurred within a matter of moments at the same general location, and were alleged to be ongoing sexual harassment, we conclude as a threshold matter that if constitutional error did occur, it was not manifest. If the two acts were not a part of a continuous course of conduct, the trial court could certainly perceive them to be, absent argument otherwise from Mr. McNearney. We decline to consider the claimed error for the first time on appeal.
*139 ¶3 In the unpublished portion of this opinion, we reject Mr. McNearney’s argument that the prosecutor engaged in misconduct. For that reason, and because Mr. McNearney raises no viable issue in his statement of additional grounds, we affirm.
FACTS
¶4 On February 26, 2014, Michael McNearney patronized the lounge on the main floor of the Davenport Tower Hotel in Spokane. While there, Mr. McNearney and his female companion made comments to and about one of the cocktail waitresses that the waitress perceived as sexual and that were unwelcome. They talked about wanting to take the waitress “upstairs”[2] and commented on her “rear-end.” Report of Proceedings (RP) at 98. At one point, as the waitress walked past Mr. McNearney, he reached under the tray she was holding and “grabbed” her vaginal area. RP at 99-100, 115. While grabbing her, he said, “I want that.” RP at 99.
¶5 Mr. McNearney got up to leave the lounge area about five or six minutes later, and as he was leaving the lounge area, he again touched the same cocktail waitress. This time, he reached out and touched her stomach. The second touching was caught on the hotel’s surveillance video.
¶6 The State charged Mr. McNearney with a single count of fourth degree assault with sexual motivation. The same information also charged Mr. McNearney with second degree theft by deception. The theft charge was based on entirely separate events.
¶7 A joint trial was held on the two charges. The State presented the waitress’s testimony that Mr. McNearney grabbed her vaginal area and the surveillance video showing that he touched her stomach moments later. The State did not elect which of these unwanted touches was the basis *140 for the assault charge. Mr. McNearney neither requested a Petrich instruction nor objected to the court’s jury instructions. The court did not instruct the jury on unanimity.
¶8 In its rebuttal to Mr. McNearney’s closing argument, the State attempted to illustrate the reasonable doubt standard with a story about Bigfoot, the mythical ape-man. Mr. McNearney did not object.
¶9 The jury returned a verdict of guilty on both counts, along with a special verdict that the assault was committed with sexual motivation. Mr. McNearney appeals.
ANALYSIS

Jury Unanimity

¶10 Mr. McNearney contends he was denied his right to a unanimous jury verdict under the Sixth Amendment to the United States Constitution because the State presented evidence of two assaults (either of which could have constituted the charged crime) and did not elect which act it was relying on to support the conviction, and the trial court failed to instruct the jury on the requirement of unanimity.
¶11 “In Washington, a defendant may be convicted only when a unanimous jury concludes that the criminal act charged in the information has been committed.” Petrich, 101 Wn.2d at 569. “When the evidence indicates that several distinct criminal acts have been committed, but [the] defendant is charged with only one count of criminal conduct, jury unanimity must be protected.” Id. at 572. To adequately protect jury unanimity, either the State must elect the specific act on which it relies for the crime charged or the court must give the jury a “Petrich” instruction, explaining that all “12 jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt.” Id. “[F]ailure to follow one of these options is error, violative of a defendant’s state constitutional right to a unanimous jury verdict and United States constitutional *141 right to a jury trial.” State v. Kitchen, 110 Wn.2d 403, 409, 756 P.2d 105 (1988).
¶12 The requirement for either an election by the State or a Petrich instruction applies only when the State presents evidence of several distinct criminal acts. State v. Handran, 113 Wn.2d 11, 17, 775 P.2d 453 (1989). “It does not apply where the evidence indicates a ‘continuing course of conduct.’” Id. (quoting Petrich, 101 Wn.2d at 571). Generally, evidence that the charged conduct occurred at different times and places tends to show that several distinct acts occurred rather than a continuing course of conduct. Id. By contrast, evidence that the defendant engaged “in a series of actions intended to secure the same objective” indicates a continuing course of conduct. State v. Fiallo-Lopez, 78 Wn. App. 717, 724, 899 P.2d 1294 (1995). In determining whether an act is one of several distinct criminal acts or part of a continuing course of conduct, “ ‘the facts must be evaluated in a commonsense manner.’ ” Handran, 113 Wn.2d at 17 (quoting Petrich, 101 Wn.2d at 571).
¶13 The State concedes that it did not elect which of the two touchings it was relying on to prove the assault charge and that the court did not give a unanimity instruction. But in addition to arguing the assaults were part of a continuing course of conduct, it makes a threshold argument that Mr. McNearney waived any instructional error by failing to raise it at trial. Mr. McNearney argues that the error is manifest constitutional error that can be raised for the first time on appeal.
 ¶14 RAP 2.5 generally precludes an appellant from raising an issue for the first time on appeal. One exception to this rule exists when an appellant can demonstrate a “manifest error affecting a constitutional right.” RAP 2.5(a)(3). “To meet RAP 2.5(a) and raise an error for the first time on appeal, an appellant must demonstrate (1) the error is manifest, and (2) the error is truly of constitutional dimension.” State v. O’Hara, 167 Wn.2d 91, 98, 217 *142 P.3d 756 (2009). The constitutional error exception “is not intended to afford criminal defendants a means for obtaining new trials whenever they can ‘identify a constitutional issue not litigated below.’ ” State v. Scott, 110 Wn.2d 682, 687, 757 P.2d 492 (1998) (quoting State v. Valladares, 31 Wn. App. 63, 76, 639 P.2d 813 (1982), rev’d in part on other grounds, 99 Wn.2d 663, 664 P.2d 508 (1983)).
 ¶15 An error is considered manifest when there is actual prejudice. The focus of this analysis is on whether the error is so obvious on the record as to warrant appellate review. O’Hara, 167 Wn.2d at 99-100. An appellant can demonstrate actual prejudice by making a plausible showing that the asserted error had practical and identifiable consequences in the trial. State v. Irby, 187 Wn. App. 183, 193,347 P.3d 1103 (2015) (citing State v. Gordon, 172 Wn.2d 671, 676, 260 P.3d 884 (2011)), review denied, 184 Wn.2d 1036 (2016).
¶16 “[T]o determine whether an error is practical and identifiable, the appellate court must place itself in the shoes of the trial court to ascertain whether, given what the trial court knew at that time, the court could have corrected the error.” O’Hara, 167 Wn.2d at 100. Importantly, “[i]t is not the role of an appellate court on direct appeal to address claims where the trial court could not have foreseen the potential error or where the prosecutor or trial counsel could have been justified in their actions or failure to object.” Id.
¶17 Given the evidence presented, we find that the failure of the court to give a Petrich instruction, if error at all, does not merit review under the RAP 2.5(a)(3) exception. If error occurred, it was surely constitutional, see Fiallo-Lopez, 78 Wn. App. at 725; State v. Hepton, 113 Wn. App. 673, 684-85, 54 P.3d 233 (2002); State v. Camarillo, 115 Wn.2d 60, 63 n.4, 794 P.2d 850 (1990), but Mr. McNearney has failed to demonstrate that it was manifest.
¶18 Placing ourselves in the shoes of the trial court, it was not at all apparent that the two touchings could be *143 viewed as separate acts, as opposed to a continuing course of conduct. Both acts were preceded by Mr. McNearney’s sexual innuendo. Within moments of his suggestive sexual statements, Mr. McNearney grabbed the waitress in the vaginal area and said “I want that.” RP at 99. Within five or six minutes, Mr. McNearney again touched the waitress in an inappropriate manner. While the second touching occurred after Mr. McNearney had risen from his seat and was leaving the lounge area, both occurred in or on the perimeter of the lounge area of the main floor of the Davenport Tower. If the jury believed the waitress—and it believed her enough to find Mr. McNearney guilty—all of Mr. McNearney’s objectionable actions were a part of an ongoing crass and demeaning “flirtation/molestation” that took place over the amount of time it took Mr. McNearney to finish his drink.
¶19 Mr. McNearney now argues that because there was a break in time and a change in location between the two touchings, they lack the continuity necessary to show an ongoing course of conduct and were, instead, separate and distinct events. But in analyzing the waiver issue, we do not engage in the analysis the trial court would have conducted if Mr. McNearney had proposed a Petrich instruction or objected and thereby brought the unanimity issue to the trial court’s attention. We focus on what was manifest where no objection was raised and no such arguments were made.
¶20 We also note that the trial court reasonably would not expect the defense to argue the acts were separate and distinct. The jury instruction conference was conducted by the trial court before the close of the State’s case. Had Mr. McNearney’s attorney requested a unanimity instruction, he would have essentially conceded that Mr. McNearney’s conduct lent itself to more than one criminal charge. The State could have moved to amend the criminal information *144 and add an additional count of fourth degree assault.[3] See CrR 2.1(d). A second assault conviction would have exposed Mr. McNearney to an additional year of incarceration. For this additional reason, defense acquiescence in the court’s instructions and the State’s position would have seemed natural and appropriate to the trial court.
¶21 Because the issue was not preserved for review and no exception exists, we decline to review Mr. McNearney’s challenge.
¶22 We affirm.
¶23 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder having no precedential value shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
Lawrence-Berrey, J., concurs.

 State v. Petrich, 101 Wn.2d 566, 572, 683 P.2d 173 (1984), overruled in part on other grounds by State v. Kitchen, 110 Wn.2d 403, 756 P.2d 105 (1988), abrogated in part on other grounds by In re Pers. Restraint of Stockwell, 179 Wn.2d 588, 316 P.3d 1007 (2014).

 At the Davenport Tower, hotel rooms are “upstairs” from the lounge.

 The State suggests that had this occurred, had the State been permitted to amend the information to allege an additional count of fourth degree assault, and had Mr. McNearney been convicted of both crimes, the argument on appeal would have been of a double jeopardy violation. See, e.g., State v. Brown, 159 Wn. App. 1, 9, 248 P.3d 518 (2010).