IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34352-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID A. MASON-DALEY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — David Mason-Daley appeals from his convictions for first degree burglary and second degree assault, raising several arguments that he did not raise at trial. We affirm.

## FACTS

Mr. Mason-Daley was charged with the two offenses following an altercation after a night of heavy drinking. The incident occurred at the home of Deborah Turner. Her sons, Joshua (age 17) and Matthew (age 24), were at the home, as were Savanna Calene and Elise Hada. Ms. Hada (age 19) was dating Mr. Mason-Daley (23). Joshua had invited the others to the house to watch a movie.

Ms. Hada left the room where the movie was playing and went downstairs to talk to Matthew Turner. This apparently made Mr. Mason-Daley jealous and he became belligerent. Joshua Turner asked him to leave. When the defendant refused to depart, Joshua recruited Matthew to assist in helping him remove Mason-Daley. A fight ensued with the two older men exchanging punches. Matthew Turner claimed Mason-Daley threw the first punch. The group was eventually able to force Mason-Daley, a larger man, out the door.

However, Mr. Mason-Daley soon forced his way back into the house and the occupants attempted to push him out once again. An even larger altercation occurred. Mr. Mason-Daley bit Deborah Turner's fingers, causing severe injury. Matthew Turner grabbed a skateboard and hit Mason-Daley over the head with it; the skateboard cracked from the blow. Joshua Turner took a small kitchen knife and stabbed Mason-Daley in the back, but the wound went unnoticed and did not stop Mason-Daley from continuing his bite on Ms. Turner. After interviewing the participants, the police eventually located Mr. Mason-Daley nearby and arrested him. He was lethargic and drunk, and did not know that he had been stabbed.

Prior to trial, Deborah Turner purportedly contacted Savannah Calene, Elise Hada, and Elise's mother, Lori Hada, and allegedly asked them to give false statements to police about Mr. Mason-Daley's behavior. Ostensibly, she wished to have them indicate

that Mr. Mason-Daley's behavior was worse than it was, perhaps even indicating that Mr. Mason-Daley sexually harassed Savannah Calene and Elise Hada, in order to justify the group's use of force against Mr. Mason-Daley. Joshua Turner also sent Facebook messages to Savannah Calene encouraging her to tell police Mr. Mason-Daley assaulted her and to not tell police Matthew Turner was present. Deborah Turner also wanted the girls to indicate that Matthew Turner was not present at the home that night because Matthew Turner had a protection order in place "against that residence" and the family believed the order prevented him from being there legally. Deborah and Joshua Turner's efforts were in vain; the police spoke with everyone present during the incident and the testimony at trial was generally consistent among the State and defense witnesses.

Both officers, the three Turners, and the next door neighbor who had talked to Mr. Mason-Daley after he left the Turner house, all testified for the State. Joshua Turner was impeached concerning his statements to Savannah Calene. Deborah Turner was not questioned about her conversations with Calene or the Hadas. The defense called the other party participants as part of the defense case. Mr. Mason-Daley also testified in his own defense. Prior to Lori Hada's testimony, the State objected to discussing Deborah Turner's telephone call with Ms. Hada, arguing that she had not been asked about them.[1]

---

[1] Prior to trial, the court had granted the State's motion in limine requiring all ER 404(b) and ER 608 matters be brought up outside the presence of the jury. Report of Proceedings (RP) at 11-12.

Defense counsel agreed with the prosecutor that the evidence made Ms. Turner out to be

a "witness tamperer" or "engaging in misconduct." Report of Proceedings (RP) at 289.

When told that he had to first confront the witness with the misconduct before

impeaching her, defense counsel responded, "fair enough your honor." RP at 289.

Mr. Mason-Daley asserted in his testimony that he was acting in self-defense in

biting Ms. Turner due to the number of people assailing his head. The court instructed

the jury on self-defense. The State requested a first aggressor instruction; defense

counsel told the court, "okay." RP at 299. The parties then argued the assault charge to

the jury on the theory of whether or not Mr. Mason-Daley acted in self-defense. The

defense argued the burglary charge on the theory that Mr. Mason-Daley only went back

into the house to retrieve his cell phone and did not enter the house with the intent to

commit a crime.

The jury returned guilty verdicts on both counts. Despite a defense argument for a

mitigated exceptional sentence, the court imposed concurrent standard range sentences

near the lower end of the spectrum. Mr. Mason-Daley timely appealed to this court. A

panel considered the case without argument.

## ANALYSIS

Mr. Mason-Daley raises several issues suggested by the facts discussed above.

Most of these arguments were not presented at trial and are therefore waived. We first

consider the waived claims before addressing his contention that the trial court erred in

4

not permitting Lori Hada to relate her telephone conversation with Deborah Turner. We then consider the remaining claims, most of which also are impacted to some degree by the failure to assert them in the trial court.

*Waived Claims*

The general rule is that an appellate court will not consider an issue on appeal which was not first presented to the trial court. RAP 2.5(a); *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988). However, RAP 2.5(a)(3) permits a party to raise initially on appeal a claim of "manifest error affecting a constitutional right." This authority is permissive; an appellate court will refuse to consider such issues if the record is not sufficient to permit review of the claim. *State v. McFarland*, 127 Wn.2d 322, 899 P.2d 1251 (1995). If the record is not adequate to review the claim, it is not "manifest" within the meaning of the rule. *Id.* at 333. Typically, the remedy in such situations is for the defendant to bring a personal restraint petition (PRP) so that additional evidence can be added to the record. *Id.* at 338 n.5; *State v. Norman*, 61 Wn. App. 16, 27-28, 808 P.2d 1159 (1991).

With this background in mind, it is clear that the claims related to the giving of the aggressor instruction are waived. The failure to challenge a jury instruction is a classic instance of waiver. *Scott*, 110 Wn.2d at 689-691. That is the situation here. In addition, it was proper to give the instruction. Self-defense is only available to respond to the *unlawful* use of force. *State v. Riley*, 137 Wn.2d 904, 911, 976 P.2d 624 (1999). Thus, one

5

who provokes another to lawfully act in self-defense is not responding to unlawful force and has no right of self-defense. *Id.* at 909. Juries must often sort out which party, if any, was justified in using force and which was not. "Where there is credible evidence from which a jury can reasonably determine that the defendant provoked the need to act in self-defense, an aggressor instruction is appropriate." *Id.* at 909-910. If the evidence is in conflict about who precipitated an encounter, the instruction is appropriate. *State v. Davis*, 119 Wn.2d 657, 665-666, 835 P.2d 1039 (1992). Given the apparent unlawful entry into the home by the defendant, and subsequent melee, the State was entitled to argue its theory to the jury that defendant could only assert self-defense if he did not start the encounter and if he was responding to the unlawful use of force. The aggressor instruction was necessary under the facts of this case.

Appellant also has waived any claims related to the offender score. He contends that the trial court should have considered whether or not the two current offenses constituted the same criminal conduct for scoring purposes despite the burglary anti-merger statute, as well as whether two of his prior offenses committed on the same day should have been treated as one. Since he failed to ask that the trial court exercise its discretion, that court could not have abused its discretionary authority. The defendant bore the responsibility of asking the court to exercise its discretion to consider whether either set of crimes should be counted as a single offense. *State v. Graciano*, 176 Wn.2d 531, 536-541, 295 P.3d 219 (2013). His failure to do so waived the issue. *Id.* at 541.

Anticipating our response, Mr. Mason-Daley claims his attorney provided ineffective assistance by failing to make this argument at sentencing. To prevail on such a claim, he would have to show both that his attorney erred so significantly that he failed to live up to the standards of the profession and that counsel's error prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 688-692, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *McFarland*, 127 Wn.2d at 334-335. Even assuming that it was error to not raise the matter, the record does not establish prejudice. In order to prevail, the record would need to show that the court likely would have granted the request. *See McFarland*, 127 Wn.2d at 333-334 (any error in failing to request suppression hearing was not manifest because defendants could not show that trial court would have granted the motion). This record does not establish that the prior offenses were necessarily the same, nor is there reason to think that the court would not have declined to apply the burglary anti-merger statute if the issue had been raised. Thus, the ineffective assistance allegation is not manifest in this context. *Id.*

The claims related to these two issues are waived. They are not the only ones. These strictures on review also shape the remaining arguments that Mr. Mason-Daley raises.

*Deborah Turner's Statement*

Mr. Mason-Daley argues that he was deprived of the opportunity to show Ms. Turner's bias against him when she allegedly asked that Elise Hada fabricate a story

7

about the defendant's behavior during the party. The defense did not comply with the strictures of ER 608(b). Thus, the trial court did not err in restricting the *manner* in which the defense tried to bring this issue before the jury.

The initial problem with this argument, as the prior portion of this opinion suggests, is that the issue was not preserved for appeal. The defense sought to admit evidence, the State objected, and the trial court excluded it because the defense had not asked Ms. Turner about the subject. The defense did not lodge an objection to the court's ruling. It instead had Ms. Hada testify concerning matters other than the telephone call with Ms. Turner.

This would normally be the end of our consideration of the issue. A party must challenge an evidentiary ruling in order to do so on appeal, and may only pursue the same evidentiary argument that it raised in the trial court. RAP 2.5(a); *State v. Guloy*, 104 Wn.2d 412, 421, 705 P.2d 1182 (1985). That did not happen here. Defense trial counsel did not object to the court's ultimate ruling and appellant does not argue that issue in this appeal.

Instead, appellant argues that he was denied the right to present a defense. *See, e.g., State v. Jones*, 168 Wn.2d 713, 719-720, 230 P.3d 576 (2010). He was not. The trial court did not rule the subject matter out of order or exclude it for that reason. The court simply concluded that the defense had not laid a proper foundation for the testimony since it had not first confronted Ms. Turner with the evidence.

8

No. 34352-9-III
*State v. Mason-Daley*

This issue was controlled by ER 608(b).[2] That rule provides that a party may not attack the credibility of a witness by extrinsic evidence of prior conduct, but the witness may be cross-examined as to her character for truthfulness or untruthfulness. ER 608(b) states:

> **Specific Instances of Conduct.** Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

The defense followed this formula when cross-examining Joshua Turner over his efforts to persuade Ms. Calene to tell the police that the defendant had attacked her and to not tell them that Matthew Turner had been present. RP at 113-115, 120. Inexplicably, the defense did not ask Ms. Turner about her efforts to influence Elise Hada's testimony. Instead, the defense cross-examined her concerning her methadone usage the day of the

---

[2] As to the limitations on impeachment, the Turner statement could have been characterized as 404(b) evidence (bias) or 608 evidence (act of untruthfulness). Both required preapproval by the court. Thus the court appropriately stopped counsel from proceeding. However, while 608 prohibits extrinsic evidence, 404(b) does not. When the court noted the evidence was inadmissible because defense counsel had not asked Turner about it, the court apparently considered the evidence to fall under 608. Defense counsel agreed with this characterization by stating "fair enough." Based on this interaction, any arguments under 404(b) were forfeited and the court's ruling did not deprive Mr. Turner of his constitutional rights.

9

incident and also obtained a lengthy description of an alleged attack on Ms. Hada by Mr. Mason-Daley at the house.[3] Thus, while the defense did impeach Ms. Turner on a couple of topics, it did not raise the issue of her alleged efforts to suborn perjury.

The effort to further impeach Ms. Turner failed because of the manner in which it was attempted. The trial court did not prohibit the defense from impeaching Ms. Turner. The judge simply required the defense to follow the rules. The defense was free to have raised the issue during Ms. Turner's testimony; it also was free to recall Ms. Turner and examine her on the topic.[4] Although the evidence of bias was relevant, the defense did not approach the issue in the correct manner.

The trial court did not infringe on Mr. Mason-Daley's ability to present a defense. This was simply an evidentiary ruling that went against the defendant. No constitutional issue was presented by this ruling.[5] Accordingly, the issue was not preserved for appeal.

---

[3] The defense subsequently called Elise Hada to testify on several subjects, including the fact that she had not been assaulted by the defendant. RP at 231. The defense also called her mother, Lori Hada, to confirm that her daughter was not injured when she returned from the Turner residence. RP at 294.

[4] In the event that Ms. Turner denied the conversation, the defense could then have asked. Lori Hada to testify about her conversation with Ms. Turner. ER 613(b). The defense recalled Officer Martin to the stand during its case in order to question him about statements made by Joshua Turner and Elsie Hada. RP at 312-322.

[5] The United States Supreme Court has recognized that admission of other "bad acts" evidence under ER 404(b) does not present a constitutional issue. *Dowling v. United States*, 493 U.S. 342, 352, 110 S. Ct. 668, 107 L. Ed. 2d 708 (1990).

10

*PostArrest Silence*

Mr. Mason-Daley also argues that his right to remain silent was violated when the two officers were questioned concerning the defendant's lack of knowledge about his injuries and the fact that he did not request medical assistance. This effort to manufacture a constitutional issue out of unchallenged evidentiary facts is without merit.

At issue is the claim that this action violated the defendant's invocation of the right to remain silent and also constituted misconduct by the prosecutor. Although he did not object at trial to either (very brief) mention of the noted facts, he now claims that this activity constituted manifest constitutional error. The record does not provide a basis for determining that this alleged error is "manifest."

There are a host of record-based problems here. First, if a CrR 3.5 hearing was ever held, no record of it was provided to this court. Similarly, there are no findings from that hearing nor any way of knowing whether the admission of these statements was somehow a contested issue. The lack of record is particularly important because we have no way of knowing when the advice of *Miranda*[6] warnings occurred with relation to the now contested observations of the officers. There likewise is no evidence concerning those observations in relation to when the police arrested Mr. Mason-Daley.[7] We also

_____

[6] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[7] The testimony strongly suggests that the arrest preceded any conversation between law enforcement and the defendant, but a finding from the trial court would easily clarify the point.

have no indication whether the defendant ever asserted his right to remain silent or requested access to an attorney.

On this record, it appears that he did not assert his right to remain silent. He made some statements to the officers that evening. The defendant not having remained silent, there was no violation of the Fifth Amendment privilege. *State v. Magana*, 197 Wn. App. 189, 194-195, 389 P.3d 654 (2016) (prearrest silence). He also testified at trial about the fact he did not know he was injured until he was in the hospital. There simply is nothing about the record of this case that suggests that any error occurred, let alone such significant error in light of the defendant's own testimony (and that of the neighbor who encountered him before the arrest) that the law enforcement testimony on this topic was the least bit prejudicial.

Appellant has not established that this issue is one of manifest constitutional error. The record simply does not permit review of this contention.

*Unanimous Verdict*

The final issue to consider is a contention that Mr. Mason-Daley was denied his right to a unanimous verdict on the first degree burglary charge. Although this

12

contention does state a manifest constitutional issue that we can consider, it is, ultimately, without merit.[8]

This area of law is well settled. A jury must unanimously agree to a criminal verdict. *State v. Smith*, 159 Wn.2d 778, 783, 154 P.3d 873 (2007) (citing Washington Constitution art. I, § 21). "When the prosecution presents evidence of several acts that could form the basis of one count charged, either the State must tell the jury which act to rely on in its deliberations or the court must instruct the jury to agree on a specific criminal act." *State v. Kitchen*, 110 Wn.2d 403, 409, 756 P.2d 105 (1988), *abrogation on other grounds recognized in In re Pers. Restraint of Stockwell*, 179 Wn.2d 588, 600-601, 316 P.3d 1007 (2014).

However, no election or unanimity instruction is needed if the defendant's acts were part of a continuing course of conduct. *State v. Handran*, 113 Wn.2d 11, 17, 775 P.2d 453 (1989). Appellate courts must "review the facts in a commonsense manner to decide whether criminal conduct constitutes one continuing act." *State v. Fiallo-Lopez*, 78 Wn. App. 717, 724, 899 P.2d 1294 (1995). A continuing course of conduct exists

---

[8] This claim of error probably is barred by the invited error doctrine. When the jury sent out a question concerning the scope of the "intent to commit a crime" element, the parties agreed with the court's written response: "the jury need not be unanimous to a particular crime" as long as all agreed that the defendant "intended to commit a crime against person or property therein." RP at 440; CP at 31. It also is less than certain that this issue is manifest constitutional error on these facts. *See State v. McNearney*, 193 Wn. App. 136, 373 P.3d 265 (2016).

when actions promote one objective and occur at the same time and place. *State v. Petrich*, 101 Wn.2d 566, 571, 683 P.2d 173 (1984); *State v. Love*, 80 Wn. App. 357, 361, 908 P.2d 395 (1996).[9]

The jury was instructed that to convict Mr. Mason-Daley of first degree burglary, it must find:

> (1) That on or about the 12th day of January 2016, the Defendant entered or remained unlawfully in a building;
>
> (2) That the entering or remaining was with the intent to commit a crime against a person or property therein;
>
> (3) That in so entering or while in the building or in immediate flight from the building the Defendant assaulted a person; and
>
> (4) That the acts occurred in Asotin County, the State of Washington.

Clerk's Papers (CP) at 16.

Mr. Mason-Daley argues here that there were numerous potential assault victims and that the State needed to elect one or the jury needed to be told it must agree on a specific victim. He is incorrect. The elements instruction simply told the jury that it needed to unanimously find that he assaulted "a person." Nothing in that instruction, nor

---

[9] A continuing course of conduct also exists when the charged criminal behavior is an "ongoing enterprise." *State v. Gooden*, 51 Wn. App. 615, 620, 754 P.2d 1000 (1988) (promoting prostitution was ongoing enterprise).

in any authority cited by Mr. Mason-Daley, suggests that the jury needed to agree that a particular person was assaulted.[10]

Regardless of that particular point, there was no need for a unanimity instruction because this was all one ongoing incident.[11] Viewed in the necessary "commonsense" manner, this charge involved a continuing course of conduct. *Fiallo-Lopez*, 78 Wn. App. at 724. There was one entry into the house. There was one brawl resulting from the effort to remove him. Multiple people were assaulted. There were not separate incidents of burglary that would have justified multiple charges.

No unanimity instruction was needed. Accordingly, the trial court did not err when instructing the jury on the first degree burglary charge.

Affirmed.[12]

---

[10] If such were the law, then presumably the prosecutor could have filed a separate burglary charge for each person who was assaulted.

[11] The prosecutor aptly points out that the unanimous verdict on the assault count indicates that the jurors did all agree that Ms. Turner was assaulted in her house. That is highly suggestive that the jury was unanimous on the identity of the assault victim for the burglary count.

[12] Mr. Mason-Daley also asks that we deny costs to the State. We decline to address that issue and leave it to our commissioner in the event that appellate costs are claimed by the State and the defendant timely objects to the cost bill. RAP 14.2.

No. 34352-9-III
*State v. Mason-Daley*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Siddoway, J.

_____
Pennell, J.