# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57646-5-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| TORIN RILAN MARCELL TINNIN, | |
| Appellant. | |

MAXA, J. – Torin Tinnin appeals his conviction of fourth degree assault-domestic violence. The conviction arose out of an incident with Rachel Coley, the mother of Tinnin's child. Apparently upset that Coley had stayed out all night while he was with the child, Tinnin came to Coley's home and pushed her several times, grabbed her neck, jabbed her in the neck, and grabbed her shirt and swung her.

Tinnin argues that the trial court erred in failing to give a unanimity jury instruction because there were multiple acts that could constitute fourth degree assault. In the alternative, Tinnin argues that he received ineffective assistance of counsel because defense counsel did not request a unanimity instruction.

We hold that (1) a unanimity instruction was not required because the evidence shows that Tinnin engaged in a continuous course of criminal conduct, and (2) Tinnin did not receive ineffective assistance of counsel because a unanimity instruction was not warranted. Accordingly, we affirm Tinnin's conviction.

FACTS

*Background*

Tinnin and Coley were in an intimate relationship for approximately a year and a half. They have a young child together.

Coley returned to her home around 5:00 AM on July 12, 2021. At 5:30 AM, Tinnin arrived at Coley's home with their daughter. He knocked loudly on the back door of the house. Coley opened the door, and Tinnin gave their daughter to Coley.

Tinnin asked Coley why she was wearing their daughter's necklace. Coley said she was wearing it because it fit her, and she didn't want her daughter to break it. Tinnin told her to take it off. Tinnin pushed Coley's shoulder, spinning her around, and removed the necklace from her neck.

Coley said goodbye to Tinnin and attempted to close the back door. Tinnin stopped the door and pushed Coley inside. Tinnin pushed Coley backwards again, and said, "What were you doing? What were you doing? Where did you go?" 2 Rep. of Proc. at 227.

Coley, still holding their child, tried to lock herself in the bathroom to call for help. However, Tinnin prevented her from closing the door. Tinnin then took Coley's phone and put it in his pocket. Coley began to scream.

Tinnin grabbed Coley's neck and pushed her up against the bathroom sink. He squeezed Coley's neck for five seconds, during which time she could not breathe. He also jabbed at her neck and throat three or four times. Tinnin then grabbed Coley's clothes and started swinging her. She screamed at him to stop.

Coley's neighbor heard the screaming and came to the house to check on her. Coley asked her to call 911. The neighbor called 911. Tinnin left before law enforcement arrived.

2

These events took place over a period of about 60 minutes.

The State charged Tinnin with second degree assault against an intimate partner.

*Trial Court Proceedings*

At trial, Coley testified regarding the facts stated above. The jury instruction for second degree assault stated that the jury must find that Tinnin intentionally assaulted Coley by strangulation. The court also granted the State's request for an inferior degree instruction for fourth degree assault.

The inferior degree instruction stated that if the jury found Tinnin not guilty of second degree assault, they could consider whether he was guilty of fourth degree assault. The instruction defined assault as "an intentional touching or striking of another person that is harmful or offensive regardless of whether any physical injury is done to the person." Clerk's Papers at 141. Tinnin's defense counsel did not request a unanimity instruction for fourth degree assault.

During closing argument, the prosecutor did not elect which of the several acts the jury should consider in determining whether fourth degree assault had occurred.

The jury found Tinnin not guilty of second degree assault, but guilty of fourth degree assault-domestic violence. Tinnin appeals his conviction.

ANALYSIS

A. UNANIMITY INSTRUCTION FOR ASSAULT CHARGE

Tinnin argues that the trial court erred in failing to instruct the jury on unanimity for assault in the fourth degree. We disagree.

1.    Legal Principles

Under article I, section 21 of the Washington Constitution, criminal defendants have a right to a unanimous jury verdict. *State v. Rodriquez*, 187 Wn. App. 922, 936, 352 P.3d 200 (2015). Generally, in cases where there is evidence of multiple acts that could support the crime charged, either the State must elect which act the jury should consider in its deliberations or the trial court must instruct the jury to unanimously agree on a specific criminal act. *State v. Christian*, 18 Wn. App. 2d 185, 208, 489 P.3d 657 (2021). The failure to do so can be constitutional error if it is possible that some jurors relied on one act and some on another act, rendering that verdict not unanimous. *Id.*

However, election by the State or a unanimity instruction is required "only when the State presents evidence of several distinct criminal acts." *State v. McNearney*, 193 Wn. App. 136, 141, 373 P.3d 265 (2016). Neither election nor a unanimity instruction is needed if the defendant engaged in multiple acts that form a single continuing course of criminal conduct. *Christian*, 18 Wn. App. 2d at 208. In other words, the jury does not need to be unanimous regarding which of the acts in a continuing course of conduct supports the conviction. *See id.* In a continuing course of conduct situation, each juror can choose one of the defendant's multiple acts in reaching a verdict.

In determining whether multiple acts form a continuing course of conduct, we consider the facts in a commonsense manner. *Id.* at 208. We determine whether the acts (1) were against the same victim, (2) occurred in the same place, (3) occurred within the same time period, and (4) were committed for the same objective. *Id.* Assault can be a continuing course of conduct crime. *Rodriquez*, 187 Wn. App. at 937.

We review de novo whether the trial court should have given a unanimity instruction. *State v. Lee*, 12 Wn. App. 2d 378, 393, 460 P.3d 701 (2020).

2.    Analysis

Viewing the evidence in a commonsense manner, the applicable factors favor finding that Tinnin's assaults against Coley were one course of conduct rather than distinct acts. First, Tinnin's actions all were directed toward the same victim, Coley. Second, all the events took place in or around the same place: Coley's home.

Third, the events occurred at roughly the same time. Although the incident took place over the course of approximately 60 minutes, such a period of time is not inconsistent with a continuous course of conduct. *See State v. Crane*, 116 Wn.2d 315, 330, 804 P.2d 10 (1991) (finding a continuous course of conduct when the defendant committed multiple acts of unwitnessed assault against a child victim over a two-hour period); *State v. Marko*, 107 Wn. App. 215, 221, 27 P.3d 228 (2001) (finding a continuing course of conduct for a defendant's actions taken over a 90 minute period aimed at intimidating witnesses).

Fourth, Tinnin displayed the same general objective in committing the multiple acts of assault. The evidence shows that Tinnin had a single motive to physically intimidate and assault Coley because she had stayed out late the night before. *See Rodriquez*, 187 Wn. App. at 937 (relying on the defendant's common objective to injure the victim because of his hostility toward her).

Tinnin argues that his actions did not form a continuing course of conduct because he had different objectives throughout the assault. He argues that when he pushed Coley's shoulder, his objective was to take off her necklace. And when he blocked Coley from closing the door to her home, his objective was to come inside the residence. When he yelled "what were you doing?"

and "where did you go?" his objective was to learn where Coley had been the night before. However, this argument is not persuasive and does not view what happened in a commonsense manner. Using the language from *McNearney*, "it was not at all apparent" that Tinnin's multiple assaults "could be viewed as separate acts, as opposed to a continuing course of conduct." 193 Wn. App. at 142-43.

Accordingly, we hold that the trial court did not err in failing to give a unanimity instruction.

B.    INEFFECTIVE ASSISTANCE OF COUNSEL

Tinnin argues that his trial counsel's failure to request a unanimity instruction amounted to ineffective assistance of counsel. We disagree.

To prevail on an ineffective assistance claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *State v. Vazquez*, 198 Wn.2d 239, 247-48, 494 P.3d 424 (2021). Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Id.* Failing to propose an instruction is not deficient performance if the trial court would not have given the instruction. *See State v. Brown*, 25 Wn. App. 2d 634, 639, 528 P.3d 370 (2023).

Here, the evidence showed that Tinnin engaged in a continuing course of criminal conduct when he carried out the assault against Coley. Therefore, the trial court was not required to give a unanimity instruction. Under these circumstances, defense counsel was not deficient in failing to propose a unanimity instruction.

Accordingly, we conclude that Tinnin did not receive ineffective assistance of counsel.

CONCLUSION

We affirm Tinnin's conviction.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

_____
MAXA, J.


We concur:

_____
CRUSER, A.C.J.

_____
VELJACIC, J.