IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>              Respondent,<br><br>       v.<br><br>ZAQUAI ZEKIE DE SHAY McCRAY,<br><br>              Appellant. | No. 86856-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, A.C.J. — Zaquai McCray appeals the judgment and sentence entered on the jury verdict that convicted him of one count of robbery in the first degree and one count of burglary in the first degree, each with a firearm enhancement. McCray asserts that his right to unanimity in the verdict was violated and that the sentencing court erred by incorrectly analyzing whether the crimes were same criminal conduct for purposes of his offender score. In his statement of additional grounds for review, McCray further alleges prosecutorial misconduct during closing argument. We affirm in part, reverse in part, and remand for resentencing.

## FACTS

The State charged Zaquai McCray and his brother, Javonne,[1] with one count each of robbery in the first degree and burglary in the first degree, each with

---

[1] Because they share the same last name, we will refer to Zaquai McCray by his last name and will use Javonne's first name for clarity. No disrespect is intended.

a special allegation that the brothers were armed with a firearm during the commission of the crimes. The charges stem from a July 13, 2019 incident when McCray and Javonne unlawfully entered an apartment occupied by Harold Walker, Desire'e Lair, Brandon Floyd, and Marquis Jones and took a number of items after threatening the victims with a shotgun.

Walker and Floyd lived together in an apartment complex in Pierce County. Lair moved into the apartment, sharing a room with Walker, while Floyd lived in a separate room down the hall. The record does not specify whether Lair was on the lease. Javonne, known to some as "Jay," and McCray, also known as "Flaco," lived in the same apartment complex and were friendly with Walker. Lair and the brothers often spent time together in each other's apartments.

Lair had known Javonne for seven or eight years before the incident. They had worked together previously and she described their relationship as being like "brother and sister." Though they lost touch for a while, they reconnected when they were both living in the same apartment complex; they frequently spent time together and visited each other's apartment. It was common for them to enter without knocking if the door was unlocked.

Shortly before the incident, Lair had borrowed Javonne's car for an errand. While en route, the car broke down. Lair notified Javonne, who responded by instructing her to figure out how to bring the car back to the apartment complex. Ultimately, the car was left on the side of the road and impounded. Later that day, Javonne visited Lair's apartment and inquired whether she arranged to retrieve the car out of the impound. When she told him she had not, Javonne asked for a game

console and her dog as compensation. She refused and Javonne reiterated that she needed to resolve the situation.

On July 13, 2019, Javonne and McCray entered Walker and Floyd's apartment through the rear sliding door without permission, armed with a shotgun. Javonne pointed the shotgun at Lair and Walker, demanding money and threatening that if they did not comply, he would just take what he wanted to settle the issue with the impounded car. A physical altercation ensued between Javonne, Floyd, Jones, and Walker inside the apartment and Javonne struck Floyd three times with the shotgun. Lair called 911 and, after the fight, Javonne and McCray took two gaming consoles, two flat screen TVs, and parts of the surround sound system from the apartment. One TV and gaming console belonged to Floyd and some of the surround sound equipment and the other gaming console belonged to Walker. The record does not indicate who owned the second TV. Javonne and McCray then left through the same sliding back door through which they had entered.

Pierce County Sheriff's Deputy Jeffery Jorgenson responded to the apartment complex around 4:00 a.m. Upon arrival, he saw a man, later identified as McCray, discarding several items outside of the building where Walker and Floyd's apartment was located. Jorgenson detained McCray and recovered a shotgun, two gaming consoles, and one controller.

McCray initially faced charges for robbery in the first degree, burglary in the first degree, and three counts of assault in the second degree, all with separate firearm enhancements. However, the State amended the charges on September

13, 2022, and removed the three counts of assault. After a joint trial, the jury found McCray guilty of both the robbery and burglary charges, and found by special verdict that the State had proved firearm enhancements for both.

The State argued in its sentencing memorandum that the robbery and the burglary should not be treated as the same criminal conduct because they involved different victims. Additionally, the State maintained that even if the court deemed the crimes the same criminal conduct, the burglary antimerger statute[2] allowed the court to treat the offenses separately for sentencing purposes. McCray filed his own memorandum requesting a 101-month sentence, which represented the low-end of his sentencing range on an offender score of two and the mandatory consecutive 60-month sentence for a single firearm enhancement, arguing that the robbery and burglary constituted the same criminal conduct. The sentencing court disagreed with the defense and found that the two offenses involved different intent. The judge stated, "I am finding that they are not same criminal conduct. And if for whatever reason I am wrong, I am exercising my discretion under the anti-merger statute to treat them separately." The court sentenced McCray to 171 months of incarceration based on a standard range sentence of 51 months for the robbery, run concurrently with 38 months for the burglary, and two mandatory consecutive 60-month terms for the firearm enhancements. The court also ordered McCray to serve 18 months of community custody upon release from prison and register as a firearm offender.

McCray timely appealed.

---

[2] RCW 9A.52.050.

ANALYSIS

McCray presents four issues on appeal, two of which pertain to his right to a unanimous jury verdict. First, he challenges the jury unanimity instruction for the first time on appeal, asserting that the State only charged him with a single count of robbery without identifying the victim, which he claims amounts to a manifest constitutional error that can be raised for the first time on appeal. Next, he asserts that the manner by which the State argued the robbery to the jury compounded the violation of his right to unanimity in the absence of a jury instruction. Additionally, McCray argues that the trial court could not exercise its discretion under the antimerger statute without first determining whether the burglary and robbery constituted the same criminal conduct. He further alleges that the prosecutor misrepresented the record during sentencing, which, he avers, prevented the sentencing court from properly evaluating the facts. Finally, McCray presents a pro se statement of additional grounds for review (SAG) that raises a separate issue of prosecutorial misconduct for the first time.

I.      Right To Unanimous Verdict

McCray raises his unanimity argument for the first time on appeal, asserting that the trial court violated his right to a unanimous jury verdict. The State counters by arguing that McCray cannot demonstrate manifest constitutional error under RAP 2.5(a)(3), as an instruction on unanimity was unwarranted based on a continuing course of conduct. Alternatively, the State asserts that even if we conclude that there were distinct robberies, any error in failing to give a unanimity instruction was harmless. The State is incorrect on this issue.

"Criminal defendants have a right to a unanimous jury verdict." *State v. Armstrong*, 188 Wn.2d 333, 340, 394 P.3d 373 (2017); WASH. CONST. art I, § 21; *see also State v. Badda*, 63 Wn.2d 176, 385 P.2d 859 (1963); *State v. Petrich*, 101 Wn.2d 566, 569, 683 P.2d 173 (1984); *State v. Whitney*, 108 Wn.2d 506, 511, 739 P.2d 1150 (1987). When the evidence indicates that more than one distinct criminal act has been committed, but the defendant is charged with only one count of criminal conduct, the jury must be unanimous as to which act or incident constitutes the crime. *State v. Noltie*, 116 Wn.2d 831, 842-43, 809 P.2d 190 (1991); *Petrich*, 101 Wn.2d at 572. In such a case, the State may elect the act on which it will rely for conviction. If the State does not do so, a jury instruction must be given to ensure the jury's understanding that all 12 jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt. *Petrich*, 101 Wn.2d at 572. "Constitutional in nature, jury unanimity concerns are reviewed de novo." *State v. Aguilar*, 27 Wn. App. 2d 905, 918, 534 P.3d 360 (2023); *see also Armstrong*, 188 Wn.2d at 339. However, an error regarding unanimity may be harmless if there was sufficient evidence to support each act that could have satisfied the charged crime. *State v. Kitchen*, 110 Wn.2d 403, 410-11, 756 P.2d 105 (1988); *see also* S*tate v. Loehner*, 42 Wn. App. 408, 411, 711 P.2d 377 (1985) (Scholfield, A.C.J., concurring); *State v. Camarillo*, 115 Wn.2d 60, 64, 794 P.2d 850 (1990), *abrogated on other grounds by State v. Crossguns*, 199 Wn.2d 282, 505 P.3d 529 (2022).

A.     Manifest Constitutional Error under RAP 2.5

Under RAP 2.5(a)(3), a party may raise an issue for the first time on appeal if it is a manifest error affecting a constitutional right. *State v. Lamar,* 180 Wn.2d 576, 582, 327 P.3d 46 (2014). "An error is considered manifest when there is actual prejudice." *State v. McNearney*, 193 Wn. App. 136, 142, 373 P.3d 265 (2016). "The focus of this analysis is on whether the error is so obvious on the record as to warrant appellate review." *Id*. "[T]o determine whether an error is practical and identifiable, the appellate court must place itself in the shoes of the trial court to ascertain whether, given what the trial court knew at that time, the court could have corrected the error." *Id*. (alteration in original).

The law is clear that the absence of an election or unanimity instruction constitutes constitutional error in a multiple acts case. *State v. Bobenhouse*, 166 Wn.2d 881, 893, 214 P.3d 907 (2009). "The error stems from the possibility that some jurors have relied on one act or incident and some another, resulting in a lack of unanimity on all of the elements necessary for a valid conviction." *Kitchen*, 110 Wn.2d at 411. The State does not appear to contest the constitutional nature of this challenge, but rather avers that McCray is unable to satisfactorily demonstrate that the error was manifest; that is, that he was prejudiced by it. The State relies on *Bobenhouse* to argue that the failure to give a *Petrich* instruction is harmless when "the evidence presented was sufficient to establish that each crime had occurred, there was no conflicting testimony, and the victim provided specific detailed testimony." 166 Wn.2d at 894. However, this argument is unpersuasive as it fails to address the legal deficiency of the manner by which the State chose

to charge and argue the case. First, a "violation of a defendant's constitutional rights is presumed to be prejudicial." *State v. Stephens*, 93 Wn.2d 186, 190-91, 607 P.2d 304 (1980). Moreover, "an error of constitutional proportions will not be held harmless unless the appellate court is 'able to declare a belief that it was harmless beyond a reasonable doubt.'" *Id*. (internal quotation marks omitted) (quoting *State v. Burri*, 87 Wn.2d 175, 182, 550 P.2d 507 (1976).

Based on the evidence presented and arguments made at trial, we hold that McCray's unanimity claim merits review under RAP 2.5(a)(3). Here, the State did not identify any victim by name in the charging document, declined to name any victim in the "to convict" instruction presented at trial, and failed to properly identify any victim of the robbery when it argued to the jury that all four victims present in the apartment on July 13, 2019 were individually robbed despite presenting only one count of robbery. Specifically, the prosecutor argued as follows:

> You heard that that night, Jay and Flaco both at some point possessed a shotgun, the same shotgun, and that they pointed it at Desire'e [Lair], they pointed it at Harold [Walker], they pointed it at Brandon [Floyd], and they pointed it at Marquis [Jones]. They threatened to kill them. They demanded their stuff. And they took it and they left.

This deficiency is fatal to the State's position on this matter because, over a century ago in *State v. Hall*, our Supreme Court held that the person from whom, or in whose presence, the property is taken must have an ownership or representative interest in the property or have dominion and control over it. 54 Wash. 142, 143-44, 102 P. 888 (1909); *see also State v. Tvedt*, 153 Wn.2d 705, 714, 107 P.3d 728 (2005). It is clear from the record that Jones and Lair did not have a property interest in either of the two gaming consoles, the two flat screen TVs, or the parts

of the surround sound system that were taken. Accordingly, neither Jones nor Lair could be a victim of the robbery charge as a matter of law. Here, the trial court gave the following jury instruction defining robbery:

> A person commits the crime of robbery when [they] unlawfully and with intent to commit theft thereof takes personal property from the person or in the presence of another and the taking was against that person's will by the use or threatened to use of immediate force, violence, or fear of injury to that person.

There was no instruction given to the jury that explained the requirement for an ownership interest in order to support a conviction for robbery.

Here, while the State is correct that *Bobenhouse* makes clear that failure to elect or issue a *Petrich* instruction may be harmless, it has failed to carry its burden to establish that the error here was harmless beyond a reasonable doubt. The record before us includes testimony establishing that neither Lair nor Jones had an ownership interest in the stolen property and therefore could not have satisfied that essential element of the "to convict" instruction, despite the prosecutor's express argument to the contrary in closing. McCray has established that this constitutional error was manifest and we address it on the merits.

## B. *Petrich* Instruction or Election

McCray contends that the trial court erred by failing to instruct the jury that in order to convict him of the robbery charge in count 1, they were required to unanimously agree as to which act constituted the charged crime, which necessarily included as an essential element, the identity of the victim. We agree.

McCray avers that the absence of the necessary jury unanimity instruction constitutes a classic *Petrich* error, as it deprived the jury of proper guidance to

reach a unanimous decision regarding which individual was robbed. He argues that the failure to ensure unanimity on this crucial element undermines the integrity of the verdict. He is correct. *See Bobenhouse*, 166 Wn.2d at 893; *Kitchen*, 110 Wn.2d at 411.

The State, however, argues that a unanimity instruction was unnecessary because McCray's actions were a continuing course of conduct. McCray challenges the State's reasoning, arguing that the "continuing course of conduct" exception to *Petrich* applies only in cases where a defendant commits multiple acts in a sequence that can be viewed as a single, continuous event. The State cites a number of cases such as *State v. Thompson*, 169 Wn. App. 436, 446, 290 P.3d 996 (2012), where the defendant sexually assaulted and robbed two women in an elevator, and *State v. Allen*,[3] where the defendant yelled racial epithets and spat at two officers three times. McCray agrees the State correctly cited cases that hold the continuing course exception to *Petrich* applied when a defendant committed multiple acts, but the reviewing court determined no unanimity error occurred because each instance of the act in sequence was part of a continuing course of conduct. However, he contends the case before us is distinguishable. McCray asserts that by omitting the *Petrich* instruction and allowing the State's closing argument that not only failed to elect, but affirmatively argued all four of the apartment's occupants were victims of the robbery, each juror could have independently decided which of the four—Lair, Walker, Floyd, or Jones—was the

---

[3] No. 68736-1-I, slip op. at 2-3 (Wash. Ct. App. Sept. 23, 2013) (unpublished), https://www.courts.wa.gov/opinions/pdf/687361.pdf. This case is unpublished. Under GR 14.1(c), we may discuss unpublished opinions as necessary for a well-reasoned opinion. It is included here only because it was offered as authority by the State.

robbery victim, despite the clear legal impossibility of that conclusion as to Lair and Jones. He further claims that it is unreasonable for the State to argue now on appeal that the jurors would not have interpreted the prosecutor's argument as suggesting that all four individuals were potential victims; that the State cannot simply present a range of possible victims and leave it up to each juror to "pick and choose" which individual was robbed.

The State further claims that a unanimity instruction was unnecessary as the "to convict" instruction did not specify a victim and this lack of specificity did not create alternative crimes for the jury to consider. Again, although four individuals beyond McCray and Javonne were present during the incident, only a single count of robbery was charged and neither the information nor the jury instructions identified a specific person as the victim. It is the manner by which the State charged and argued this case that created alternative crimes for the jury to consider. This assignment of error is not simply based on the absence of an instruction on unanimity, but rather on how that omission interacts with the State's failure to properly elect the specific act on which it intended to rely to secure a guilty verdict on this count. Based on the jury instructions, which describe the robbery as simply being committed against "another" or "a person" and the State's argument that

> Jay and Flaco both at some point possessed a shotgun, the same shotgun, and that they pointed it at Desire'e [Lair], they pointed it at Harold [Walker], they pointed it at Brandon [Floyd], and they pointed it at Marquis [Jones]. They threatened to kill them. They demanded *their* stuff. And *they took it* and they left.

(emphasis added), the jury rendered a guilty verdict without any indication that the jurors unanimously agreed on who was robbed. This is further supported by the State's own concession in its sentencing brief that the principle articulated in *Hall* and *Tvedt* as to the required proof of an ownership interest in order to support a robbery conviction, applied to this case. It affirmatively asserted, despite its argument to the jury, that "there were, *at most*, three victims of the robbery: Harold Walker, Brandon Floyd, and Desire'e Lair." (Emphasis added.) After outlining the items taken pursuant to the robbery, the State continued by stating that

> only Mr. Floyd, Mr. Walker, and *possibly* Ms. Lair, had ownership, representative, or possessory interest in the property taken. Mr. Jones was merely a guest in the home and had no interest in the property. Thus, there were at least two, but at most three, victims of the robbery.

(Emphasis added.) Even after the conclusion of a trial that resulted in guilty verdicts, the State itself could not describe with confidence what facts it had proved with regard to the robbery. Accordingly, we reverse McCray's conviction for robbery in the first degree.

II.    Same Criminal Conduct

In light of our reversal of McCray's conviction for robbery in the first degree, he is entitled to recalculation of his offender score and resentencing on the burglary conviction. However, in the event that the State elects to retry him, and if he is again convicted of robbery, the sentencing question he presents in this appeal is capable of repetition. For that reason, we reach McCray's separate challenge to the determination at sentencing that the crimes of conviction did not constitute the same criminal conduct. The State counters that the court correctly found the

crimes to be separate and, even if the court was mistaken, it properly exercised its discretion to treat the offenses independently. On this matter, we agree with the State.

McCray contends that the trial court's task was to assess whether "the record supports" a same criminal conduct finding. He further claims that during sentencing, the State took a position on the facts that differed from its stance at trial, thereby influencing the court's decision against treating the burglary and robbery as a single offense for purposes of sentencing. It is not lost on this panel that the State went to great lengths to argue that there was no unanimity error based on a continuing course of conduct, which necessarily requires "an ongoing enterprise with a single objective," but its position with regard to sentencing was that it had proved distinct acts with separate intent and victims sufficient to overcome McCray's request to have them deemed same criminal conduct. *State v. Love*, 80 Wn. App. 357, 361, 908 P.2d 395 (1996). McCray asserts that the similar inconsistency between the theories offered at trial and sentencing hindered the court's ability to properly apply the same criminal conduct criteria in assessing his request. However, regardless of the conflicting framing by the State, McCray fails to directly address how the court's alternative basis for the sentence, application of the antimerger statute, constituted an abuse of discretion.

At sentencing, the judge stated,

I also think that the burglary was completed at the moment they entered the residence and placed the firearm in the victims' faces. It wasn't until after that was completed that they took the property and left the residence, which was the robbery.

So for those reasons, I am finding that they are not same criminal conduct. *And if for whatever reason I am wrong, I am*

*exercising my discretion under the anti-merger statute to treat them separately.*

(Emphasis added.) The "burglary antimerger statute allows a sentencing judge discretion to punish, separately, a crime committed during a burglary, regardless of whether it and the burglary encompassed the same criminal conduct." *State v. Lessley*, 118 Wn.2d 773, 776, 827 P.2d 996 (1992); *see also State v. Kisor*, 68 Wn. App. 610, 618, 844 P.2d 1038 (1993); *State v. Davis*, 90 Wn. App. 776, 783, 954 P.2d 325 (1998). The burglary antimerger statute, RCW 9A.52.050, provides that

> [e]very person who, in the commission of a burglary shall commit any other crime, may be punished therefor as well as for the burglary, and may be prosecuted for each crime separately.

The sentencing court plainly had discretion under RCW 9A.52.050 to find that the burglary and robbery convictions should be sentenced separately.

III.    Statement of Additional Grounds for Review

In his pro se SAG, McCray assigns error to a statement made by the prosecutor during closing argument, claiming it constituted prosecutorial misconduct. We reach this issue in the event that McCray is tried again for the robbery so that he may better understand the bounds of what is permitted in closing argument.

We review allegations of prosecutorial misconduct for an abuse of discretion. *State v. Azevedo*, 31 Wn. App. 2d 70, 78, 547 P.3d 287 (2024). A defendant claiming prosecutorial misconduct must establish both improper conduct and resulting prejudice. *State v. Stenson*, 132 Wn.2d 668, 718, 940 P.2d 1239 (1997). Prejudice exists where "'there is a substantial likelihood that the

misconduct affected the verdict.'" *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006) (quoting *State v. Brown,* 132 Wn.2d 529, 561, 940 P.2d 546 (1997)). "Prosecutors are not permitted, during closing arguments, to state their personal beliefs about the defendant's guilt or innocence." *State v. Dhaliwal*, 150 Wn.2d 559, 577, 79 P.3d 432 (2003). In assessing allegations of improper comments during closing arguments, we consider the remarks in the context of the entire argument, the issues in the case, the evidence discussed, and the jury instructions. *Id*. at 578. "A defendant's failure to object to a prosecutor's improper remark constitutes a waiver, unless the remark was 'so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice' that could not have been cured by an instruction to the jury." *State v. Gregory*, 158 Wn.2d 759, 841, 147 P.3d 1201 (2006) (quoting *Stenson*, 132 Wn.2d at 719).

McCray challenges the following statement by the prosecutor during closing argument:

> At one point in that home, both of these men held that shotgun. Both of these men threatened those individuals in their home. Both of these men are guilty of Robbery in the First Degree and Burglary in the First Degree.

There was no objection to this argument at trial. McCray avers the prosecutor's comments amount to an appeal to the "passion and prejudice" of the jury and argues that only reversal can cure the misconduct. However, these statements are not misconduct, but rather the State's assertion of the position it has taken from the moment it filed charges against McCray: that it was able to prove beyond a reasonable doubt that McCray and his brother committed acts which meet the statutory elements of burglary in the first degree and robbery in the first degree,

both while armed with a firearm. The statement is simply the State's recitation of its theory of the case, which was laid out over the course of a trial that spanned roughly two weeks.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

Hazel, ACJ

WE CONCUR:

Díaz, J.

Dwyer, J.